Margaret P. GOFF and William
D. Goff, Appellants,

v.

Charles Leon BRANCH, Appellee.

No. 04–91–00097–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1991.

Rehearing Denied Feb. 5, 1992.

L. Keith Slade, Tucker, Hendryx & Gascoyne, Houston, for appellants.

Paul M. Green, Laura Cayaretta, Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for appellee.

Before REEVES, C.J., and CHAPA and GARCIA, JJ.

OPINION

CHAPA, Justice.

Appellants, Margaret P. Goff, and her husband, William D. Goff, appeal a trial court's order of dismissal for want of prosecution. The issues before this court are whether the trial court erred in dismissing appellants' medical malpractice cause of action against Dr. Charles Leon Branch for want of prosecution, and in denying appellants' motion for reinstatement of their lawsuit.

Under TEX.R.CIV.P. 165a(1), a trial court has the power to dismiss "for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice." TEX.R.CIV.P. 165a(3) provides that upon proper motion for reinstatement "[t]he court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained."

■ The reinstatement provisions of TEX.R.CIV.P. 165a(3) must be construed in connection with the grounds for dismissal set out in TEX.R.CIV.P. 165a(1) and, therefore, apply only to cases that are dismissed because of failure of a party to appear or make an announcement. *Speck v. Ford Motor Co.*, 709 S.W.2d 273, 275 (Tex. App.—Houston [14th Dist.] 1986, no writ). Therefore, under TEX.R.CIV.P. 165a(3) "[r]einstatement of the case is mandated, upon a finding that the failure of either the plaintiff or his attorney to appear at the calling of the dismissal docket was not intentional or the result of conscious indifference, but was due to an accident or mistake or that the failure has been otherwise reasonably explained." *Mandujano v. Oliva*, 755 S.W.2d 512, 514 (Tex.App.—San Antonio 1988, writ ref'd), citing *Price v. Firestone Tire & Rubber Co.*, 700 S.W.2d 730, 733 (Tex.App.—Dallas 1985, no writ). "[T]he refusal to reinstate a case dismissed when the plaintiff herself is present in court and ready to proceed constitutes an abuse of discretion." *Wyatt v.*

*Texas Oklahoma Express, Inc.*, 693 S.W.2d 731, 733 (Tex.App.—Dallas 1985, no writ).

■ When properly invoked, the trial court also has inherent powers to dismiss for want of prosecution, which are not unbridled but subject to review under the abuse of discretion standard. *Bevil v. Johnson*, 157 Tex. 621, 307 S.W.2d 85, 87 (Tex.1957); *Frank v. Canavati*, 612 S.W.2d 221, 222 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). An application for reinstatement is likewise addressed to the sound discretion of the court. *Buchanan v. Masood*, 631 S.W.2d 219, 221–22 (Tex. App.—Amarillo 1982, no writ); *Jarvis Co., Inc. v. Wes–Tex Grain Co.*, 548 S.W.2d 775, 778 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.).

■ Appellant has the burden of providing the appellate court with a record showing the error alleged. TEX.R.APP.P. 50(d). TEX.R.APP.P. 74(f) provides that "[a]ny statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party."

■ Further, where there are "no statement of facts or findings of fact before us, we must presume the trial court had before it and passed on all facts necessary to support the judgment." *Knight v. Trent*, 739 S.W.2d 116, 119 (Tex.App.—San Antonio 1987, no writ), citing *Davis v. Huey*, 571 S.W.2d 859, 962 (Tex.1978). The record provided this court by the appellants contains a statement of facts of the hearing on the motion to reinstate, but no statement of facts or findings of fact of the dismissal hearing. Therefore, the presumptions in favor of the dismissal order prevail, and appellants' complaint as to the dismissal order is rejected. However, since we are provided with a statement of facts as to the reinstatement hearing, the dispositive issue is whether the trial court abused its discretion in refusing to reinstate the dismissed cause.

■ On appeal, the parties cite to conflicting authorities which hold both that the trial court abused its discretion in failing to

reinstate a dismissed case under the attending circumstances of each case and that the trial court did not abuse its discretion. However, we note that appellee relies considerably on cases where the appellate court was not provided with a statement of facts or findings of fact from either the dismissal hearing or the reinstatement hearing. Nevertheless, we find *Mandujano* and *Wyatt* controlling in the case before us. *Mandujano*, 755 S.W.2d 512; *Wyatt*, 693 S.W.2d 731.

*Mandujano* involved a dismissal for want of prosecution and refusal to reinstate, with a notice and dismissal order similar to the notice and order now before us. *Id.* In *Mandujano*, this court held that although there was no statement of facts of the dismissal hearing, the trial court, nevertheless, abused its discretion in failing to reinstate the case as provided for under Rule 165a(3). *Id.* at 514; TEX. R.CIV.P. 165a(3). This court held that under TEX.R.CIV.P. 165a(3), "[r]einstatement of the case is mandated, upon a finding that the failure of either the plaintiff or his attorney to appear at the calling of the dismissal docket was not intentional or the result of conscious indifference, but was due to an accident or mistake or that the failure has been otherwise reasonably explained." *Id.* Moreover, in a separate point of error, this court disposed of appellee's insistence that appellants "also failed to plead due diligence in prosecution of the lawsuit," holding that it was also an abuse of discretion not to reinstate the cause "where on its face the record demonstrates that the case had been prosecuted with due diligence." *Mandujano*, 755 S.W.2d at 515.

*Wyatt* likewise involves a dismissal for want of prosecution and a refusal to reinstate. *Wyatt*, 693 S.W.2d 731. In *Wyatt*, the court dismissed the case for want of prosecution when appellant's counsel appeared twenty-five minutes late on the second day of trial, although the appellant appeared on time. The trial court refused to reinstate the cause. In holding that the trial court abused its discretion, the appellate court stated:

In resolving the question now before us, we recognize that, generally, the trial court is entitled to consider the entire history of the case and that the plaintiff's assertion at dismissal that she did not intend to abandon the case is immaterial.... However, when, as here, the plaintiff's past inactions have been forgiven by the trial court's proceeding to trial without dismissing the case because of those transgressions, a different circumstance is presented.... ("Thereafter the case lay dormant for two years and five months.... However, from this point forward, Plaintiffs became active again...."). Here, the failure of plaintiff's counsel to timely appear in court on the second day of trial, when plaintiff herself timely appeared in court and was ready to proceed at 9:00 a.m., does not justify a refusal to reinstate plaintiff's case. Regardless of what may have transpired before in this case, the failure of counsel in this instance should not be charged against his client. We do not question the trial court's finding that the failure of plaintiff's counsel to timely appear was the result of conscious indifference. We are of the opinion, however, that the trial court abused its discretion in punishing counsel's indifference by refusing to reinstate this cause rather than imposing some sanction on the offender—plaintiff's counsel. Thus, we hold that the refusal to reinstate a case dismissed when the plaintiff herself is present in court and ready to proceed constitutes an abuse of discretion.

*Wyatt*, 693 S.W.2d at 733 (citations omitted).

In the present case, the notice of setting, which was signed by a deputy district clerk, merely informed appellants that their case was set for dismissal on a day certain. The notice also warned the appellants that "[i]f no announcement [was] made, this cause [would] be dismissed for want of prosecution", and nothing more. As in *Mandujano*, a reasonable reading of the notice merely gave the appellants notice that the dismissal setting was pursuant to the provisions of Rule 165a(1). TEX. R.CIV.P. 165a(1). Thereafter, the court or-

der, dismissing appellants' cause of action, read as follows:

> On the 16th day of October, 1990 came to be heard at 8:30 the following numbered and entitled causes, the same having been specially set for trial by an order duly entered in the manner provided by law, and the plaintiff in each and all of said causes as same were reached upon the call of the docket, having failed to appear in person or by attorney, or make any announcement, the court is of the opinion that each and all of said causes should be dismissed for the want of prosecution.
>
> . . . .
>
> 85–CI–08704 Margaret P Goff et vir vs Charles Leon Branch MD

In *Adams v. Adams,* it was stated that: It is generally held that the legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms. Where the language used in a judgment is plain and unambiguous, there is no room for construction or interpretation and it becomes the duty of the courts to declare the effect thereof in the light of the literal meaning of the language therein employed.

*Adams v. Adams,* 214 S.W.2d 856, 857 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.); *see Ellis v. Mortgage & Trust, Inc.,* 751 S.W.2d 721, 723 (Tex.App.—Fort Worth 1988, no writ). Since "the language used in [this] judgment is plain and unambiguous, there is no room for construction or interpretation", and we are duty bound "to declare the effect thereof in the light of the literal meaning of the language therein employed." *Id.*

Consequently, applying the foregoing standard, we must construe the dismissal judgment in question as having been rendered against the appellants for the reasons unambiguously stated therein: that "the plaintiff in each and all of said causes as same were reached upon the call of the docket, having failed to appear in person or by attorney, or make any announcement". Therefore, the dismissal judgment, which was based on a notice invoking the provisions of Rule 165a(1), clearly was also rendered under the provisions of this same rule. TEX.R.CIV.P. 165a(1). Considering that both the notice and the dismissal judgment were based on the provisions of Rule 165a(1), it necessarily follows that the reinstatement hearing, which is merely a review of the dismissal judgment, would likewise be subject to the reinstatement provisions of Rule 165a(3). TEX.R.CIV.P. 165a(1) & (3). Moreover, we must follow the same interpretation of TEX.R.CIV.P. 165a(3) articulated by this court in *Mandujano. Mandujano,* 755 S.W.2d at 514; *see Speck,* 709 S.W.2d at 275.

Contrary to the recitations in the dismissal judgment, the reinstatement statement of facts clearly reflects that the appellants established that they were, in fact, not only present at the dismissal hearing with their counsel, but that they notified the court that they were ready for trial and had requested a trial setting. Further, not only does the record show that the appellee failed to contradict the appellants in this respect, but the trial judge, who had rendered the dismissal, also failed to contradict the appellants. Accordingly, as there is no contradiction of this fact in the record, the trial court should have accepted that the appellants and their counsel were indeed present at the dismissal hearing, that they notified the court that they were ready for trial and, further, that they requested a trial setting.

Moreover, appellants state in their appellate brief that "at the time of the dismissal hearing and the hearing on appellants' motion for reinstatement, appellants' counsel filed a verified motion to retain on or about August 20, 1990, wherein a trial setting was requested and appellants' counsel swore that the case was ready for trial, and that he was, at that time, prepared to go to trial"; and, that "both counsel for Appellants and Appellants were present at the dismissal hearing and announced ready for trial." Since these statements made by the appellants in their original brief are unchallenged by the appellee, we will accept them as correct. TEX.R.APP.P. 74(f).

Additionally, in oral argument before this court, both parties conceded that all parties were represented by counsel at the dismissal hearing. Appellants further represented, without contradiction, that both the appellants and their attorney were present at the dismissal hearing, and were ready for trial. Therefore, since it was conclusively established at the reinstatement hearing, and verified before this court, that appellants did not, in fact, "fail to appear in person or by attorney, or make any announcement" at the dismissal hearing, as appears to be the justification for the dismissal in the dismissal judgment, "[r]einstatement of the case [was] mandated" under the provisions of Rule 165a(3). *Mandujano,* 755 S.W.2d at 514; TEX. R.CIV.P. 165a(3). Further, not only were the appellants present at the dismissal hearing and ready for trial as in *Wyatt,* but appellants' counsel was also present and requested a trial setting. The trial court abused its discretion in failing to reinstate the cause. The point is sustained.

Appellee insists, however, that the trial court was nevertheless justified in denying reinstatement under its inherent powers because there was no showing by the appellants at the reinstatement hearing that they prosecuted the cause diligently. Since we have concluded that the notice, the dismissal judgment, and the reinstatement hearing were all clearly under the provisions of TEX.R.CIV.P. 165a(1) and (3), the only issue before the court at the reinstatement hearing was whether "the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained." Accordingly, the uncontradicted evidence that the appellants and their attorney were present, ready, and demanded a trial setting at the dismissal hearing, mandated reinstatement. *Mandujano,* 755 S.W.2d at 514.

■ We recognize that the court also has inherent powers to dismiss for want of prosecution, aside from the provisions of TEX.R.CIV.P. 165a(1), provided proper notice is given to the party whose cause is to be dismissed. However, we can find no authority for a court to invoke for the first time, without prior notice, its inherent powers to dismiss for want of prosecution in a reinstatement hearing clearly involving only the review of a dismissal order under TEX.R.CIV.P. 165a(1). This is especially true when notice [1] received by the party whose cause has been dismissed was pursuant only to Rule 165a(1) [2]. If a trial court had authority to invoke its inherent powers to dismiss for want of prosecution at any time, with or without proper notice, cases could be summarily dismissed at random in the privacy of the court's chambers. Such a situation would be unjust and untenable.

■ Moreover, even if we were to ignore all of the foregoing, we would nevertheless hold, as in *Mandujano,* that the "record demonstrates the case had been prosecuted with due diligence". *Mandujano,* 755 S.W.2d at 515. The record reveals a transcript of over 250 pages, and over 900 pages of exhibits and depositions which were introduced at the reinstatement hearing, evidencing appellants' activities in the case, as well as the expenses incurred in the furtherance of the prosecution of this case, which amounted to approximately $18,000.00. The only appreciable time reflecting a lack of activity, which was revealed by the record, was from 1985 when the suit was filed to April of 1987, when the court permitted the substitution of the present attorneys of record by the appellants. Although at the reinstatement hearing the trial court recognized that the present attorneys were "not accountable" for this period, appellee nevertheless insists that the reinstatement was properly denied and primarily points to a lengthy ordeal involving the taking of a deposition

1. The notice sent to appellants merely notified them to be present at the dismissal docket, and stated that if no announcement was made, their case would be dismissed for want of prosecution.

2. TEX.R.CIV.P. 165a(1) provides in pertinent part that "[a] case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice."

in Hawaii of Dr. Graham, whom the appellants repeatedly insisted was critical to their case.

In addition to a number of documents, letters, and depositions, the record reflects that appellants noticed and arranged to take the deposition of Dr. Graham in Hawaii in 1987; that at that time, appellants' counsel made arrangements with the doctor, the court reporter, and a video camera company in Hawaii, which was paid $4,000.00; that appellants had an attorney at the airport about to depart to Hawaii when they were notified by appellee's counsel and a district judge that a motion to quash had been filed and set for hearing on November 6, 1987; and, that at the hearing on the motion to quash, the court failed to make a ruling, but instead took the matter under advisement. The record further reflects that when no ruling was made by January, 1988, the appellants sent the court a letter, reiterating the appellants' need for the deposition of Dr. Graham to present their case; and, that after failing to receive a ruling, appellants renoticed the taking of Dr. Graham's deposition, which the court quashed in May of 1988, notifying appellants that in the future they had to coordinate with the appellee and the court for any rescheduling of the deposition to "determine that portion of [appellee's] Motion for Protective Order which relates to [appellants'] payment of reasonable expenses and attorneys' fees for attending such deposition".

The record also shows that on August 9, 1988, the court entered an order to the effect that the deposition of Dr. Graham could be taken upon the conditions that the date was mutually acceptable to both attorneys, and that appellants tender to the appellee's attorney, within 20 days of the deposition, "a cash sum equaling one-half (½) the cost of a round trip coach airline ticket to Honolulu, Hawaii, plus $1,500.00 attorneys' fees"; that mandamus relief was sought thereafter in this court and in the supreme court, without success; and, that Dr. Graham's deposition was finally taken on July 24, 1990 on written questions and returned to appellants in August of 1990, at which time a request was made for

a trial setting, at about the same time that a notice was received that appellants' cause was set on the dismissal docket for the 16th day of October, 1990. Thus, the appellants should not have been punished for delays in the Hawaii depositions, when these delays were at least partially caused by the inordinate delays in the court's rendering of its rulings.

The record additionally reflects that although the case was dismissed at the dismissal docket on the 17th day of October, 1990 by one district judge, on the 14th day of November, 1990, another district judge notified the appellants that their cause was "specially set for Tuesday the 27th day of November, 1990 at 8:34 A.M. and unless other announcement[s] [were] made the same [would] be dismissed for the want of prosecution at the cost of the various Plaintiff(s)". Nevertheless, appellants' motion to reinstate was denied on the 14th of January, 1991.

As in *Wyatt*, the past inactions of appellants' original attorney from 1985 to 1987 was apparently forgiven by the court, since no dismissal resulted at that time, and the court, in fact, permitted the substitution of counsel. *Wyatt*, 693 S.W.2d at 733. As in *Wyatt*, not only were the appellants present at the dismissal hearing, but their attorney was also present and announced that the parties were ready for trial. *Wyatt*, 693 S.W.2d at 733. As in *Mandujano*, reinstatement was mandated under TEX.R.CIV.P. 165a(3) since not only did the appellants establish that their failure to attend the dismissal hearing was not due to conscious indifference but, in fact, that appellants and their attorney were indeed present and announced ready for trial at the dismissal hearing. *Mandujano*, 755 S.W.2d at 514. As in *Mandujano*, the "record demonstrates the case [was] prosecuted with due diligence." *Mandujano*, 755 S.W.2d at 512. The court abused its discretion in failing to reinstate the dismissed cause.

Although at the present time, the law applies the general standard of abuse of discretion upon appellate review of cases involving dismissal for want of prosecution,

the recent holding of the Texas Supreme Court in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), is instructive as to what may be required in the future when, as in the present case, the sanction "preclude[s] a decision on the merits of a party's claim." *Id.* at 920.

In *TransAmerican Natural Gas Corp.*, the Texas Supreme Court granted mandamus relief to a party whose pleadings were struck, whose cause of action was dismissed, and against whom a default judgment was granted based on a counterclaim, reserving only the issue of damages. *Id.* The sanctions had been imposed by the trial court upon the relator as a result of discovery abuse. The supreme court held that mandamus lies:

> when a trial court imposes discovery sanctions which have the effect of precluding a decision on the merits of a party's claims—such as by striking pleadings, dismissing an action, or rendering default judgment—a party's remedy by eventual appeal is inadequate, unless the sanctions are imposed simultaneously with the rendition of a final, appealable judgment.

*TransAmerican Natural Gas Corp.*, 811 S.W.2d at 920.

The court further established standards which "set the bounds of permissible sanctions under Rule 215 within which the trial court is to exercise sound discretion ..." in granting a just sanction order. *Id.* at 917 (footnote omitted); TEX.R.CIV.P. 215. In order for a sanction to be just, 1) it "must be directed against the abuse and toward remedying the prejudice caused the innocent party" which means that "the sanction should be visited upon the offender" requiring "[t]he trial court [to] at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both"; 2) and, it "must not be excessive" which means that "[t]he punishment should fit the crime" requiring that "courts must consider the availability of less stringent sanctions and

whether such lesser sanctions would fully promote compliance". *Id.*

Pertaining to "death penalty"[3] sanctions, the court stated:

> [W]hen a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. '[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.'

*Id.* at 918 (citations omitted). The court also made the following recommendation in order to aid the appellate courts in their efforts to determine the propriety of the sanctions imposed:

> The district court made no findings to support the sanctions imposed. Rule 215 does not require a trial court to make findings before imposing discovery sanctions, and we do not add such a requirement here. We note only that we do not have the benefit of any explanation by the district court for the severity of its ruling. It would obviously be helpful for appellate review of sanctions, especially when severe, to have the benefit of the trial court's findings concerning the conduct which it considered to merit sanctions, and we commend this practice to our trial courts....

*Id.* at 919 n. 9 (citations omitted).

Although *TransAmerican Natural Gas Corp.* involves a case of discovery abuse rather than one of dismissal for want of prosecution, it is instructive nevertheless, since a dismissal for want of prosecution, by any name, results in a "death penalty."

The judgment is reversed, and the cause is ordered reinstated.

---

**3.** "Death penalty sanction" is a term adopted by the legal community to describe a sanction imposed by the trial court which, in effect, eliminates a claim, counterclaim, or defense and precludes a decision on the merits of the party's claim, counterclaim, or defense.