**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Appellant,

v.

**Tommy ROSSA and Penny Rossa, Appellees.**

**No. 10–91–194–CV.**

Court of Appeals of Texas,
Waco.

April 22, 1992.
Rehearing Denied June 17, 1992.

Paul K. Pearce, Jr., and Steven R. Shattuck, Fanning, Harper & Martinson, Dallas, John O'Herren, Sheehy, Lovelace & Mayfield, J. Robert Sheehy and Benjamin N. Hamilton, Sheehy & Hamilton, L.C., Waco, for appellant.

Kae L. Brockermeyer, Brockermeyer & Associates, Elizabeth Sturdivant Kerr, Boswell & Kerr, P.C., Fort Worth, Dan Boulware, Cleburne, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

United States Fidelity and Guaranty Company (USF & G) appeals the imposition of a "death penalty" sanction—the striking

of USF & G's pleadings and the entry of a $1,000,000 default judgment against it—for alleged discovery abuse. Using the guidelines established by the Supreme Court in *Transamerican Natural Gas Corporation v. Powell,* we hold that the sanction was not "appropriate." *See Transamerican Natural Gas Corporation v. Powell,* 811 S.W.2d 913, 916 n. 4 (Tex.1991). The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

## BACKGROUND

Tommy Rossa was a passenger in a vehicle involved in an automobile accident with Thad Felton in December 1989. He and Penny, his wife, sued Felton in June 1990. The primary insurance carrier, Farmers Insurance Company, tendered its policy limits of $25,000. While the Rossas' suit against Felton was pending, they discovered that USF & G had issued a $1,000,000 commercial-business policy to Felton's employer, Cletex, and that Felton, who was general manager and secretary-treasurer of Cletex, may have been listed on the policy as an additional insured.

Barbara Cross, USF & G's supervising claims adjuster in Fort Worth, interviewed Felton in January 1990. He told her that he had been driving a 1989 Jeep Cherokee owned by Shelly Wood, with her permission, and that when the accident occurred he was not driving in the course and scope of his employment. Thus, Cross believed that Cletex had no liability. She did no further coverage investigation until April, even though Felton had also told her that his 1988 Ford Taurus was listed on the USF & G policy, and she was aware that Tommy Rossa had sustained serious injuries in the accident. Felton also told Cross that his only liability coverage was with USF & G, and she later confirmed that he was an insured under the USF & G policy.

Upon learning of the USF & G policy, the Rossas' attorney wrote to USF & G offering to discuss a settlement. USF & G then hired a law firm to represent Felton, sent a reservation-of-rights letter to the defense attorney that Farmers Insurance had provided, and hired an accident reconstructionist. On May 4, five days before the scheduled trial, USF & G decided that its policy afforded no coverage for the accident and notified all parties that it was withdrawing from Felton's defense. Under the circumstances, Felton agreed to a $1,500,000 judgment in favor of the Rossas in exchange for their covenant not to execute.

On July 5, the Rossas filed this action, seeking to establish that USF & G's policy afforded Felton $1,000,000 in liability coverage. They named Felton as a defendant, and he filed a cross-claim against USF & G for breach of its duty of good faith and fair dealing. The Rossas asserted rights as third-party beneficiaries to the USF & G policy proceeds and, as judgment creditors of Felton, to any additional damages Felton might recover on his bad-faith claim. USF & G filed a declaratory-judgment action in federal court against Felton, asking that the federal court declare that the policy did not cover him for the accident. It also filed a petition to remove this case to the federal court, where it remained for eight months before the court remanded it.

The Rossas initiated discovery following the remand, attempting to determine the basis for USF & G's denial of coverage, whether USF & G had waived or was estopped to assert a no-coverage defense, and whether it had acted in bad faith toward Felton. After USF & G responded to the discovery requests, the Rossas filed a motion to compel and for sanctions under Rule 215, asserting that the responses were frivolous, evasive, non-responsive, and made for delay only, and that no specific privilege or exemption had been asserted. There had been no other discovery disputes between the parties.

At the hearing in June 1991, Cross was questioned about the facts of the accident, the extent of USF & G's investigation, and its basis for denying coverage. In some instances, when her responses differed from USF & G's written responses, she attributed the written answer to the advice of counsel. She also acknowledged that some responses were deficient. For example, Cross testified that, when it withdrew

from Felton's defense, USF & G knew what its position regarding coverage was and what it would be if further litigation was filed. Interrogatory number two asked about USF & G's contentions regarding coverage. USF & G's answer referred the Rossas to its pleadings then on file—i.e., a general denial, to the reservation-of-rights letter, and to the policy itself. Although the reservation-of-rights letter was supposed to have been attached to the responses as an exhibit, it was not. Cross admitted that she did not think that the answer to interrogatory number two described in sufficient detail each defense or contention of USF & G or that it set forth a factual basis for every defense or contention. The Rossas had requested that USF & G admit that Felton was driving the Jeep Cherokee at the time of the accident with the vehicle owner's permission. USF & G had responded: "This defendant is unable to admit or deny this request. To this point, sufficient discovery has not yet been conducted in this case to determine whether or not Felton had the permission of Shelly Wood to drive the vehicle at the time of the accident.... And this defendant does not have sufficient independent knowledge to admit or deny this request." However, Cross testified that the statement she took from Felton indicated that he had permission from Wood to drive the Jeep.

At the conclusion of the sanction hearing, the court stated:

> I fail to see in this case where you've already got a judgment over here for $1,500,000 why we don't pay a little closer attention to what we're doing. I think you have been playing hide and seek. You've used unnecessarily frivolous, dilatory tactics. You've abused your discovery process, and the court hereby strikes your pleadings and enters a default judgment against the defendant USF & G with all interest. That's all. Draw me up an order.

In the judgment, the court found that USF & G had abused the discovery process by failing to properly and timely comply with the plaintiffs' discovery requests and that the responses were "evasive, incomplete, unreasonably frivolous and made for the purpose of delay." The judgment struck USF & G's pleadings, deemed the plaintiffs' material allegations admitted, and awarded liquidated damages in the amount of $1,000,000—the limit of USF & G's policy. The Rossas' claims against USF & G were then severed from the remaining claims.

The Supreme Court issued the opinion in *Transamerican* one day after the sanctions hearing. Forty-one days later the court made voluminous findings, tracing the language of *Transamerican*, in support of the judgment imposing the sanction.

## RULE 215 SANCTIONS

USF & G attacks the imposition of the "death penalty" sanction and the entry of the default judgment as constituting an abuse of discretion.

A sanction imposed for discovery abuse must always be "appropriate" under the circumstances of the specific case. *See* TEX.R.CIV.P. 215; *Transamerican*, 811 S.W.2d at 916 n. 4. In *Transamerican*, the Supreme Court said "appropriate" and "just" are equivalent standards. *Transamerican*, 811 S.W.2d at 916 n. 4. We use a two-step analysis to determine if a sanction is "appropriate." First, we ask whether there is a direct relationship between the offensive conduct and the sanction imposed; that is, was the punishment imposed upon the true offender and directed at remedying the prejudice caused by the discovery abuse? Second, were less severe sanctions available which would promote compliance? *See id.* at 917. The punishment should fit the crime. *Id.; Pelt v. Johnson*, 818 S.W.2d 212, 216 (Tex.App.—Waco 1991, no writ). A discovery-abuse sanction should be the "least severe sanction adequate" to achieve its legitimate purpose. *Pelt*, 818 S.W.2d at 216 n. 1. The court should resolve all doubts in favor of reaching a decision on the merits. *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3rd Cir.1984); *Hanley v. Hanley*, 813 S.W.2d 511, 518 (Tex.App.—Dallas 1991, no

writ). Ultimate penalties, such as exclusion of essential evidence, striking pleadings, dismissal, and default, should be "the exception rather than the rule." *Lassiter v. Shavor*, 824 S.W.2d 667, 670 (Tex.App.—Dallas, 1992, n.w.h.).

We review a "death-penalty" sanction by the same standard as any other sanction imposed under Rule 215—abuse of discretion. *See* Tex.R.Civ.P. 215; *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990); *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986); *Pelt*, 818 S.W.2d at 216. A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker et al., v. The Honorable Anne Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Although trial judges have been encouraged to file findings of fact and conclusions of law when sanctions are imposed, such findings are not the same as those contemplated by Rules 296 and 297 because findings made under those rules are made in a "case tried ... without a jury." Tex.R.Civ.P. 296, 297; *Transamerican*, 811 S.W.2d at 919 n. 9. Factors other than "evidence" actually introduced at the sanctions hearing may be justifiably considered by the court in its decision to impose a sanction. During appellate review, the entire record, including the "evidence," arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse, must be examined. *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 954 (Tex. App.—Fort Worth 1991, no writ). Findings filed in a sanctions context should not be given the same weight as findings made under Rules 296 and 297. Tex.R.Civ.P. 296, 297; *Goff v. Branch*, 821 S.W.2d 732, 738 (Tex.App.—San Antonio 1992, no writ). Thus, we are not limited to a review of the "sufficiency of the evidence" to support the findings made; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion in imposing the sanction. *See Johnson*, 700 S.W.2d at 918; *Lassiter*, 824 S.W.2d at 669; *Abcon Paving*, 820 S.W.2d at 954.

Before choosing a sanction to correct discovery abuse, a court must weigh: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the discovery abuse; 3) any history of dilatoriness; 4) whether the offending conduct was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which requires an *analysis* of alternative sanctions; and 6) the merit of the claim or defense. *See Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868–70 (3rd Cir.1984); *Pelt*, 818 S.W.2d at 216–17. To assure that the extreme sanction of dismissal or default is used only in the instances where justified, no one factor or group of factors is given undue emphasis and no factor or factors will be considered to be adequate absent consideration of all the others. *Poulis*, 747 F.2d at 870. Sanctions which are so severe that they prevent presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *National Hockey Club, Inc. v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Transamerican*, 811 S.W.2d at 918; *Hanley*, 813 S.W.2d at 517.

Although the court pronounced judgment before *Transamerican* set forth the definitive guidelines for imposition of the ultimate sanction, we must use those guidelines in our review of the sanction on appeal. *See Transamerican*, 811 S.W.2d at 917. The record does not reflect that USF & G acted with flagrant bad faith or with callous disregard of its responsibilities for discovery under the rules, that the court evaluated the relative culpability of USF & G and its attorneys, that the Rossas were irreparably prejudiced by USF & G's responses, or that USF & G was dilatory. Even assuming that the court correctly

considered USF & G's removal to federal court as made for delay only, the Rossas could have proceeded with discovery during that eight-month interval. Also, the record does not reflect that the court analyzed lesser sanctions that may have remedied the problem. *See Transamerican,* 811 S.W.2d at 919; *Pelt,* 818 S.W.2d at 218. Although some of USF & G's answers to the Rossas' discovery were evasive and nonresponsive in light of the information the adjuster had at her disposal, the court could have ordered USF & G to file amended responses. *See* Tex.R.Civ.P. 215(1)(b). It could have corrected the abuse by imposing a monetary sanction, taking into account the expense and attorney's fees unnecessarily incurred by the Rossas. *See id.* at 215(2)(b)(2). Finally, the court made no analysis which would support the conclusion that USF & G's defenses were meritless and thus justifiably struck. *See Transamerican,* 811 S.W.2d at 917–18; *Jacques v. Texas Employers' Ins. Ass'n,* 816 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1991, no writ).

### DUE–PROCESS REQUIREMENTS

■ USF & G also attacks the striking of its pleadings as a violation of its state and federal due-process rights. The imposition of sanctions is limited not only by the *Transamerican* analysis under Rule 215 but also by the constitutional requirements of due process. U.S. Const. amend. V, XIV; Tex. Const. art. 1, § 19; *Fjelstad v. American Honda Co.,* 762 F.2d 1334, 1338 (9th Cir.1985); *Hanley,* 813 S.W.2d at 517. Thus, due-process requirements are an additional obstacle to the imposition of sanctions that preclude presentation of the merits of a claim or defense.

■ Texas courts must afford litigants federal standards of due process. *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 899–900, 99 L.Ed.2d 75 (1988). "Due process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which 'the deception relates to the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Fjelstad,* 762 F.2d at 1338 (quoting *Wyle v. R.J. Reynolds Indust., Inc.,* 709 F.2d 585, 589 (9th Cir.1983)).

■ The death penalty should never be imposed unless a party's egregious hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Transamerican,* 811 S.W.2d at 917–18; *McConnell v. Memorial Const. Co.,* 821 S.W.2d 166, 167–68 (Tex.App.—Houston [1st Dist.] 1991, no writ). After a review of the entire record, we do not believe that USF & G's conduct justified such a presumption.

### CONCLUSION

Imposition of the "death penalty" did not meet the *Transamerican* guidelines. *See Transamerican,* 811 S.W.2d at 917; *Poulis,* 747 F.2d at 868–70; *Pelt,* 818 S.W.2d at 216–17. This resulted in an abuse of discretion requiring reversal of the judgment. *See Walker,* 827 S.W.2d at 840.

Tactics such as those used by USF & G or its trial counsel only undermine the process that discovery was meant to aid and should not be condoned or go unpunished. Under these circumstances, however, the extent of the hindrance to discovery did not justify a presumption that USF & G's defenses lacked merit, and the discovery sanctions imposed should not have been used to adjudicate the merits of its defenses. *See* U.S. Const. amend. V, XIV; Tex. Const. art. 1, § 19; *Fjelstad,* 762 F.2d at 1338; *Hanley,* 813 S.W.2d at 517.

We reverse the judgment and remand the cause for further proceedings consistent with this opinion.