James R. SHOOK, Appellant,

v.

GILMORE & TATGE MANUFACTUR-ING CO., et al., Appellees.

No. 10–92–014–CV.

Court of Appeals of Texas,
Waco.

March 3, 1993.

Rehearing Denied March 31, 1993.

---

John R. Gladney, Frances Travers Collins, Kreisner & Gladney, Austin, for appellant.

Kevin J. Cook, Gary W. Maxfield, DeHay & Blanchard, L.L.P., Dallas, David R. Poage, Parker B. Binion, Baker & Botts, Houston, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

James Shook appeals the imposition of a "death penalty" sanction—the dismissal of Shook's causes of action against all three defendants—for abuse of the litigation and discovery process and for interfering with the orderly and proper administration of justice. Shook complains that the trial court erred in dismissing his causes of action against Gilmore & Tatge Manufacturing Company and Owen Smith because the court lacked authority to impose sanctions for the type of conduct shown. Shook also complains that the court erred in dismissing his cause of action against Belfalls Electric Cooperative as a punishment for contempt of court. Finding that the trial court abused its discretion in dismissing Shook's causes of action, we reverse the judgment and remand the cause for further proceedings in accordance with this opinion.

## BACKGROUND

James Shook's son and two other young men were killed in a farming accident in 1986. The families of the men filed suit against Gilmore & Tatge Manufacturing Co., Owen Smith, and Belfalls Electric Cooperative, Inc. to recover damages for their deaths. In 1988 all of the plaintiffs, except Shook, non-suited their claims in Falls County, refiled them in Hidalgo County, and soon thereafter settled their causes of action. Shook refused to join the suit in Hidalgo County, and instead, continued with the litigation in Falls County. During

the discovery process, Shook was represented by at least four attorneys and also represented himself on several occasions, acting as a pro se litigant.

Beginning in January 1990, Shook made numerous harassing, threatening telephone calls to the opposing parties and their attorneys. These calls were a barrage of dark threats designed to intimidate and frighten the defendants and their attorneys. This aberrant behavior occurred while Shook was represented by counsel, as well as while he was acting as a pro se litigant. These disconcerting threats and comments included: "Have you ever killed a man? I wanted you to know that it is easier after the first time"; "Do you have the nerve to show up at next week's hearing?"; "The only way to get rid of me is pay me or kill me"; "It will be a long drop to the pavement from your building"; "This case is not going to trial. I am going to take care of it outside of the courthouse"; and "Tell him his worst nightmare called." The defendants' attorneys received several threatening phone calls from Shook per day, despite their repeated requests that he stop calling.

On April 18, 1991, just nineteen days before a scheduled trial date, the court conducted a hearing on Smith's and Gilmore & Tatge's motions for sanctions based on Shook's pattern of abuse and harassment of the defendants and their attorneys. Shook admitted making these telephone calls, offering the excuse, "I would like to get this thing [the case] settled. It's been going on five years and everybody else has been paid off and I would like to be." Finding that Shook's conduct was "beyond the bounds of human decency" and an "abuse of the litigation and discovery process," the court struck Shook's pleadings against Smith and Gilmore & Tatge and dismissed those causes of action with prejudice. After the hearing, as the defense attorneys left the courthouse, Shook continued to verbally abuse and insult them. Shook threatened the lives of the attorneys and their families as a result of the dismissal. The bailiff from the court had to physically restrain Shook until the defendants' attorneys were safely

in their cars and on their way home. The hectoring phone calls continued until one week after the sanctions hearing.

On July 18, 1991, the court held a telephone-conference hearing on Belfalls' motion for sanctions based on the same type of conduct shown in the prior hearing. Even though Shook had not made any phone calls to Belfalls, Smith, or Gilmore & Tatge since a week after the April 18 hearing, the court found that Shook's conduct was a contempt of court and interfered with "the orderly and proper administration of justice." The court granted Belfalls' motion and dismissed Shook's cause of action against Belfalls. Shook appeals the court's dismissal of his causes of action against all three defendants, claiming that the court abused its discretion in imposing such a harsh sanction.

## INHERENT POWER TO SANCTION

In his first point, Shook complains that the court lacked authority to dismiss Shook's causes of action against Smith and Gilmore & Tatge. Imposing an available sanction is left to the sound discretion of the trial court. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case, the court's act was arbitrary or unreasonable. *Id.* The court's order striking Shook's pleadings does not indicate under what authority the sanctions were imposed. Therefore, we will address the Rules of Civil Procedure and other authority under which the court could have imposed the "death penalty" sanction.

Rule 13 authorizes a trial court to impose sanctions for groundless pleadings brought in bad faith or brought for the purpose of harassment. TEX.R.CIV.P. 13. Smith and Gilmore & Tatge did not allege, nor does the sanction order find, that Shook's pleadings were groundless and brought in bad faith or that the pleadings were brought for the purpose of harassment. Therefore, the imposition of the

"death penalty" sanction was not authorized by Rule 13. Rule 215 authorizes a trial court to impose sanctions for violations of discovery orders or for abuse of the discovery process. Tex.R.Civ.P. 215. Shook's conduct, though egregious, did not violate any discovery rules. Shook answered the interrogatories propounded to him and did not miss any scheduled depositions or fail to comply with any discovery orders. Because this sanction does not relate to discovery, Rule 215 does not apply. Although Rule 166 does not expressly authorize sanctions, the Texas Supreme Court has held that courts have the power, implicit under Rule 166, to impose sanctions for the violation of a pre-trial order. *See Koslow's*, 796 S.W.2d at 703–04. Shook's conduct, however, did not violate a pre-trial order. Thus, the dismissal of his causes of action was not implicitly authorized by Rule 166. We have found no other statute or rule expressly authorizing sanctions for this type of egregious conduct.

Until recently, no case has determined whether Texas courts also have an inherent, common law power to sanction similar in scope to the federal power. *See Chambers v. NASCO, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In *Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex.App.—Corpus Christi 1992, no writ), the Court of Appeals held that Texas courts have inherent power to sanction bad faith conduct during litigation. In *Kutch*, the court recognized the trial court's inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts. *Id.* at 510. According to the Corpus Christi Court, however, certain limitations on the trial court's inherent power exist. *Id.* For inherent power to apply, the conduct complained of must have significantly interfered with the court's administration of its core functions—hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment. *Id.* More importantly, the rights of litigants may not be infringed by the abusive exercise of this power. *Id.* at 511. Therefore, a sanction imposed pursuant to the court's inherent power must be "just" and "appropriate." *Id.* (citing *Koslow's*, 796 S.W.2d at 703–4 n. 1). Furthermore, due process considerations limit a court's inherent power to sanction. *Id.*

■ The Texas Supreme Court, however, has never recognized the inherent power of Texas courts, absent the violation of a rule or pretrial order, to sanction a party's bad faith conduct during litigation. We note that, in *Remington Arms Co., v. Hon. Benjamin Martinez*, the Supreme Court recognized the trial court's "comprehensive inherent and statutory power to discipline errant *counsel* for improper *trial conduct* in the exercise of its *contempt power.* Trial counsel are also subject to *disciplinary action* for improper *trial conduct.*" 850 S.W.2d 167, 172 (1993) (emphasis added) (citations omitted). In this case, however, the offender was not an attorney and the case was dismissed nineteen days before trial. Because the sanctions against Shook do not deal with the improper conduct or bad faith of counsel at trial, the inherent power of the trial court recognized by the Supreme Court in *Remington* does not apply. *See id.*

■ The sanctions order in *Remington* did not result from discovery misconduct and was, therefore, not authorized by Rule 215. Finding that the trial court had refused to hold the offending attorney in contempt and had failed to refer him to the appropriate bar authorities for discipline, the Supreme Court held that the trial court was not justified in imposing the death penalty sanction. *See id.* The Supreme Court limited the trial court to the "guiding rules and principles" of contempt and attorney-discipline rather than unleashing an inherent power to sanction bad faith conduct during litigation. *See id.* As a result, we decline to wholeheartedly follow the holding of the Corpus Christi Court of Appeals in *Kutch*. 831 S.W.2d at 509. Without determining whether the trial court had an inherent power to sanction Shook, or whether Shook's malicious conduct did, in some way, interfere with the traditional

core functions of the court, we agree, however, that any exercise of such power must be "just" and "appropriate" and is limited by due process considerations. *See Kutch,* 831 S.W.2d at 511.

### THE JUST AND APPROPRIATE STANDARD

 Whether an imposition of sanctions is just and appropriate is measured by two standards: first, a direct relationship must exist between the offensive conduct and the sanction imposed; and second, the sanction imposed must not be excessive. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991). A permissible sanction should, therefore, be no more severe than necessary to satisfy its legitimate purposes. *Id.* This means that a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and punishment of the offender. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). These standards set the bounds of permissible sanctions within which the trial court is to exercise sound discretion. The imposition of very severe sanctions, however, is limited, not only by these standards, but by constitutional due process.

### DUE PROCESS CONSIDERATIONS

 According to the Supreme Court in *TransAmerican,* "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of the case." *TransAmerican National Gas Corp.,* 811 S.W.2d at 918. Accordingly, sanctions that are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.* (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam)). Although the sanctions in *TransAmerican* were imposed pursuant to Rule 215, we adopt this test to determine whether sanctions were properly

imposed under the court's inherent power because the same due process considerations are at issue. A court's inherent power to sanction bad faith conduct during litigation should not be used to deny a trial on the merits unless the court finds that the egregious conduct "justifies a presumption that [the party's] claims or defenses lack merit" and that "it would be unjust to permit the party to present the substance of that position before the court." *Chrysler Corp.,* 841 S.W.2d at 850.

### SHOOK'S BAD FAITH CONDUCT DURING LITIGATION

 Nothing in the record indicates that the court considered the availability of lesser sanctions. *See TransAmerican,* 811 S.W.2d at 917. Nevertheless, Smith and Gilmore & Tatge argue that, in certain circumstances, a party's conduct can be so egregious that the court should not be required to gamble on whether lesser sanctions would be effective. They waited, however, for over one year before taking any action to deter Shook's conduct. Although they asked Shook to stop making the threatening phone calls, other avenues were available to deter his egregious conduct. They never sought a court-order or injunction against Shook, nor did they file criminal harassment charges against him. When they first sought the imposition of sanctions, the court dismissed Shook's causes of action against Smith and Gilmore & Tatge. More significantly, there is no indication in the record that the court even considered the availability of lesser sanctions before dismissing Shook's causes of action. *See TransAmerican,* 811 S.W.2d at 917. As a result, the sanction imposed was more severe than necessary to satisfy its legitimate purposes. *See Chrysler Corp.,* 841 S.W.2d at 850.

 Furthermore, the record does not support a presumption that Shook's claims lack merit. To the contrary, the record shows that the other plaintiffs in this case settled their causes of action for substantial sums of money. More importantly, this case does not involve a party's hinder-

ance of the judicial process as is the situation when a plaintiff's flagrant bad faith or counsel's callous disregard for the rules prevents the defendant's discovery of the factual basis of the plaintiff's cause of action. *See TransAmerican,* 811 S.W.2d at 918. Shook's conduct, though egregious, was not shown to have impeded Smith's and Gilmore & Tatge's defense of the case. Finally, the court made no analysis that would support the conclusion that Shook's claims were meritless. *See U.S. Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 673 (Tex.App.—Waco 1992, writ denied). We conclude, therefore, that due process considerations precluded the court from dismissing Shook's causes of action without affording him an opportunity for a hearing on the merits of his case. *See TransAmerican,* 811 S.W.2d at 918.

Because the court failed to consider a lesser sanction before striking Shook's pleadings, and because the record does not support a presumption that his claims lacked merit, we hold that the trial court abused its discretion in dismissing Shook's causes of action against Smith and Gilmore & Tatge. We sustain point one.

### CONTEMPT SANCTIONS

■ In his fourth point, Shook complains that the court erred in dismissing his cause of action against Belfalls as a punishment for contempt of court. Contemptuous conduct may be classified as either direct or constructive. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). Direct contempt occurs in the presence of the court; constructive contempt, on the other hand, occurs outside the presence of the court. *Ex parte Werblud,* 536 S.W.2d 542, 546 (Tex.1976). The distinction between the two types of contempt are important because more procedural safeguards are afforded to constructive contemnors than to direct contemnors. *Id.* Due process requires that the constructive contemnor be given "full and complete notification" and a reasonable opportunity to meet the charges by way of defense or explanation. *Ex parte Edgerly,* 441 S.W.2d 514, 516 (Tex.1969). The court must issue a valid show cause order or equivalent legal pro-

cess apprising the contemnor of the accusation. *Id.* A contempt judgment rendered without such notification is a nullity. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406, 407 (1928).

■ In the present case, the contemptuous conduct occurred outside the presence of the court. Therefore, to hold Shook in constructive contempt, the court must have afforded Shook full and complete notice apprising him of the accusation of contempt against him. The only notice Shook received was Belfalls' motion for sanctions. This motion did not request the court to hold Shook in contempt. As a result, Shook received no notice apprising him of the accusation of contempt against him. Because Shook was not personally served with a show cause order or the equivalent, the contempt judgment against Shook is a nullity. *See id.*

■ According to Belfalls, the sanction imposed was not a contempt sanction but was a sanction under the inherent power of the court. Belfalls argues that, because Shook did not request findings of fact and conclusions of law, this court must presume that the trial court made all the necessary findings to support the sanction of dismissal. This is incorrect. *See Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (1993). The findings of fact and conclusions of law for a sanctions hearing are not the same as those contemplated by Rules 296 and 297 of the Rules of Civil Procedure. *Rossa,* 830 S.W.2d at 672, *cited with approval in Chrysler,* 841 S.W.2d at 852. Findings filed in a sanctions context should not be given the same weight as findings made under Rules 296 and 297. *Id.; Goff v. Branch,* 821 S.W.2d 732, 738 (Tex.App.—San Antonio 1992, writ denied). During appellate review, the entire record, including the "evidence," arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse, must be examined. *Rossa,* 830 S.W.2d at 672; *Abcon Paving, Inc. v. Crissup,* 820 S.W.2d 951, 954 (Tex. App.—Fort Worth 1991, no writ). Thus, we are not limited to a review of the "suffi-

ciency of the evidence" to support the findings made or implied; rather, we make an independent inquiry of the entire record to determine whether the court abused its discretion in imposing the sanction. *Rossa,* 830 S.W.2d at 672; *See also Otis Elevator,* 850 S.W.2d at 181; *Chrysler,* 841 S.W.2d at 852–53. Again, nothing in the record indicates that the court considered or tested lesser sanctions before dismissing Shook's cause of action against Belfalls. Furthermore, the record does not support a presumption that his claims lacked merit. Therefore, a sanction of dismissal would have been unjust for the reasons stated in point one. Accordingly, we sustain point four.

## CONCLUSION

Having sustained points one and four, we need not consider Shook's remaining points. This court does not condone Shook's conduct and hopes that no attorney or party to litigation will be subjected to such psychological vigilantism in the future. Nevertheless, the record before us establishes that the trial court abused its discretion by dismissing Shook's causes of action against Smith, Gilmore & Tatge, and Belfalls. We reverse the judgment and remand the cause for further proceedings.

THOMAS, Chief Justice, dissenting.

This is, as far as I can determine, the only case in American jurisprudence in which a court has sanctioned a litigant for using death threats to try to extort a settlement. What is significant about the majority's opinion is, first, their reluctance to explicitly hold that a Texas court has the inherent power to sanction a litigant for such conduct and, second, their refusal to hold that such conduct raises the presumption that the extortionist's claims lack merit. I believe the court had the inherent power to impose the "death penalty" based on a reasonable presumption that a person who attempts to extort a settlement by using death threats has a meritless claim. Accordingly, I would affirm the judgment in its entirety. For these reasons I respectfully dissent.

## INHERENT POWER TO SANCTION

Although alluding to the inherent power to sanction, the majority side-steps the question of whether the court could exercise its inherent power to sanction Shook's flagrant bad-faith conduct. That Texas courts have inherent powers they can rely on to protect their dignity, independence, and integrity and to aid in the administration of justice is well-recognized. *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979). Also "well-acknowledged" is the inherent authority to sanction bad-faith litigation practices. *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). This includes the power to dismiss. *Link,* 82 S.Ct. at 1390. The Texas Supreme Court, in fact, recently recognized the "comprehensive" inherent power of a court to sanction counsel for abusive conduct occurring during litigation. *Remington Arms Co., Inc. v. Hon. Benjamin Martinez,* 850 S.W.2d 167, 172 (1993). Another court of appeals has already recognized the inherent power to sanction abusive litigation practices. *Kutch v. Del Mar College,* 831 S.W.2d 506, 509 (Tex.App.—Corpus Christi 1992, no writ). This power is also recognized elsewhere. J.D. Page & Doug Sigel, *The Inherent and Express Powers of Courts to Sanction,* 31 S.Tex.L.Rev. 43, 46 (1990).

Notwithstanding the ample authority supporting the inherent power of a court to sanction flagrant bad-faith trial conduct, the majority refuses to apply the inherent power recognized in *Remington* because the court sanctioned Shook and not his counsel. The inherent power to sanction extends equally to litigants and counsel. *Roadway Exp., Inc.,* 100 S.Ct. at 2464. If, as the majority implies, the inherent power to sanction only operates against counsel and not the parties, a court would be left to the mercy of litigants, unable to protect its integrity, independence, or the administration of justice from their abusive trial conduct. What an incongruity! I would expressly hold that the court had the inherent

power to sanction Shook for the most egregious conduct ever sanctioned in Texas—attempting to extort a settlement by death threats.

## CONSTRAINTS ON INHERENT POWER

The ultimate constraint on use of the death penalty is constitutional due process. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex.1991); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 2105–06, 72 L.Ed.2d 492 (1982); *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958); *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 379–80, 53 L.Ed. 530 (1909). The constitutional limitation has been reiterated: "Consistent with due process guarantees, death penalty sanctions should be used only when the sanctioned party's conduct 'justifies a presumption that its claims or defenses lack merit.'" *Remington Arms Co., Inc.*, 850 S.W.2d at 171 (quoting *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992)). Due process is preserved whenever the presumption of a meritless claim or defense arises from a party's conduct and the claim or defense is stricken. *Societe Internationale*, 78 S.Ct. at 1094–95.

I believe the due-process constraint requires the trial court always to use a lesser sanction *unless* the party's bad-faith conduct justifies a presumption that his claim or defense lacks merit. Only then can the court impose the death penalty without violating due process. *Id.* This is because substantive due process protects meritorious claims or defenses, not meritless ones. Thus, the due-process constraint is merely a corollary of the second requirement in *TransAmerican:* The sanction imposed must not be excessive. *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917. Unless the offending party's conduct will justify the presumption, the death penalty will always be excessive. Therefore, the court must resort to lesser sanctions until the party's recalcitrant conduct will support the presumption. This means that the court can never strike a meritorious claim or defense without violating due process.

However, a court can never abuse its discretion or violate substantive due process, assuming the sanctioned party is granted procedural due process, by striking a meritless claim or defense. There can be no constitutional implications, injury, or harm in doing so.

Essentially, the difference in the majority's view and mine is simple. We disagree on whether Shook's conduct justifies a presumption that his claims lack merit. I believe it does; the majority believes otherwise. If they are correct, a lesser sanction should have been used. However, if my view is correct, the death penalty was properly used against Shook's meritless claims.

The majority concludes that his claims have merit because other plaintiffs had already settled their cases with the defendants. Shook has the burden of showing error requiring a reversal. *See* Tex. R.App.P. 50(d). Thus, he must demonstrate in the record that the court violated his right to due process by striking meritorious claims. None of the settlement papers of other parties appear in this record, and for all we know any settlement with other parties was premised on the usual blanket denial by the defendants of any wrongdoing or liability. Just because a claim is settled does not mean it has merit.

## SHOOK'S ATTEMPTED EXTORTION

Shook admitted that he used death threats against the defendants and their counsel in an attempt to force a settlement of his claims. These threats continued even after the sanction hearing. His actions amounted to attempted extortion, pure and simple. If Shook's calculated attempt to extort a settlement by death threats does not justify a presumption that he has a meritless claim, then I cannot imagine what other flagrant, abusive conduct will raise it. His conduct is no different than any other person using death threats to extort money. If the presumption is not justified by his conduct, then a person attempting to extort money from a bank cannot be presumed to have a meritless claim to the bank's money. I believe

**896**

one can reasonably presume that a person who must resort to death threats in an attempt to force a settlement has a meritless claim. Using the death penalty to strike a meritless claim does not violate due process and cannot be excessive. *Societe Internationale,* 78 S.Ct. at 1094–95.

The alpha and omega of the judiciary is to administer justice fairly and impartially in a forum and in an atmosphere where the rule of law prevails. Regardless of how one breaks this core function into its various parts, the administration of justice is at the very center of the judiciary's existence. Shook's admitted behavior, calculated scheme, and motivating purpose so defile the institution of the judiciary and the administration of justice that only the severest of sanctions can remove the lingering, corrosive effect of his actions. Indeed, so reprehensible is his conduct that, search as I might, I cannot find another case even approaching this one in egregious bad faith. Surely a court must have the inherent power to protect itself and the administration of justice from Shook's litigation practices. To hold otherwise ignores the very reason for the judiciary's existence.

## TRANSAMERICAN STANDARDS MET

The first requirement of *TransAmerican* is met—the sanction is clearly levied against the offending party, Shook. *See TransAmerican Natural Gas Corp.,* 811 S.W.2d at 917. The second requirement—the sanction must not be excessive—has also been met. *See id.* The death penalty cannot be excessive when used against a meritless claim. Accordingly, I would hold that it was warranted and properly imposed under the court's inherent power. Shook used death threats against all of the defendants and their attorneys. Thus, I would affirm the judgment in its entirety.