In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-227 CV


____________________



IN RE POLARIS INDUSTRIES, INC. 






Original Proceeding 


 




MEMORANDUM TO CLERK



 You are directed to make the following corrections in the Opinion dated November
29, 2001:

 On page 12, following the first paragraph, change the subheading Considerations 
 to Due Process Considerations. 

 You will give notice of the correction of the original opinion by sending a copy of
corrected page 12, accompanied by this memorandum, to all interested parties who
received a copy of the original opinion.

 Entered this 2nd day of January, 2002.

 

 PER CURIAM

 


In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-227 CV


____________________



IN RE POLARIS INDUSTRIES, INC. 






Original Proceeding 


 




OPINION
 


 In this products liability suit Polaris Industries, Inc. ("Polaris") seeks a writ of
mandamus directing the trial court to vacate its sanctions order that struck Polaris's
pleadings and that imposed liability on Polaris. Polaris claims the trial court erroneously
found discovery abuse and violated the standards for the imposition of death penalty, or
case determinative, discovery sanctions. We conditionally grant Polaris's petition for writ
of mandamus.



 The Accident


 Letha Irving and her husband, Robert Irving, filed suit for damages against several
defendants, including Polaris, a maker of personal watercraft ("PWC"), for injuries
sustained in an accident that occurred on July 13, 1996. Letha Irving was operating a
Kawasaki jet ski (PWC), and Anna Broughton was the operator of a Polaris jet ski (PWC). 
Irving asserts that Broughton released the throttle on the Polaris jet ski and attempted to
steer it away from Irving, but could not do so once the throttle was released. The Polaris
jet ski crashed into Letha Irving, who sustained multiple injuries, including an injury to
her right leg that required its amputation. 

The Trial Court Proceedings


 Alleging the product was defective, the Irvings sued the manufacturer, Polaris, for
design defect, marketing defect, negligence, gross negligence, breach of warranty,
bystander recovery, and conspiracy. The Irvings' petition claims the Polaris jet ski
"lacked brakes and the ability to steer and/or any type of device which would assist in
steering, turning, decelerating, controlling and/or stopping." The Irvings also sued
Kawasaki Motors Corp., U.S.A. (Kawasaki), (1) the manufacturer of the jet ski Letha Irving
was operating, and Rayon's, Inc., the distributor of the Polaris jet ski. (2) After considerable 
discovery had been directed to Polaris, the Irvings filed a motion to compel. Following
a hearing on March 16, 2001, the trial court entered an order overruling Polaris's
objections to certain interrogatories and requests for production; the order required full and
complete responses to the discovery requests. Polaris produced additional documents and
filed supplemental answers to interrogatories. The Irvings then filed a motion for sanctions
and several supplemental motions which included the following grounds, among others: 
failing to comply with the trial court's March 16, 2001, order on the Irvings' motion to
compel; failing to produce requested documents; failing to timely supplement responses;
making false statements; and breaching a Rule 11 agreement of March 16, 2001. On May
11, 2001, after a hearing at which only arguments of counsel were made and written proof
was submitted, the trial court granted the Irvings' motion for sanctions and struck Polaris's
pleadings. 

No Adequate Remedy By Appeal


 Mandamus is an extraordinary remedy that may be utilized only when there is no
adequate appellate remedy. Walker v. Packer, 827 S.W.2d 833, 841 (Tex. 1992) (orig.
proceeding). In striking Polaris's pleadings, the trial court issued case determinative
sanctions and thereby denied Polaris the opportunity to develop the merits of its case on
which any subsequent appeal would be based. Polaris has no adequate remedy by appeal. 
See TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 920 (Tex. 1991) (orig.
proceeding). 

Abuse of discretion


 Appellate courts generally review trial court sanctions orders under an abuse of
discretion standard. See Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex.
1986). The issue in a mandamus proceeding is whether the trial court acted arbitrarily or
unreasonably without reference to any guiding rules or principles. See Walker, 827
S.W.2d at 839; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). The sanctions order here includes findings of fact. Findings of fact by a trial court
in the discovery context are not given the same deference as fact findings made by a trial
judge after a full trial on the merits where the judge serves as factfinder. See United States
Fidelity and Guar. Co. v. Rossa, 830 S.W.2d 668, 672 (Tex. App.--Waco 1992, writ
denied). In Rossa, the court held that the proper standard of review of a discovery
sanctions order involves "an independent inquiry of the entire record to determine if the
court abused its discretion in imposing the sanction." Id. This standard of review was
expressly approved by the Texas Supreme Court in Chrysler Corp. v. Blackmon, 841
S.W.2d 844, 852 (Tex. 1992), where the court also noted that in the vast majority of cases
the trial court's fact findings concerning death penalty sanctions do not "meaningfully
assist appellate review." The Texas Supreme Court reaffirmed this less deferential
appellate standard of review of sanctions orders in IKB Indus. (Nigeria) Ltd. v. Pro-Line
Corp., 938 S.W.2d 440 (Tex. 1997), where the court noted that an order imposing
discovery sanctions "may be reversed for an abuse of discretion even if findings and
evidence support it." Id. at 442. With respect to findings of law, a trial court's failure
to analyze or apply the law correctly will constitute an abuse of discretion. See Walker, 
827 S.W.2d at 840.

The Guiding Rules and Principles


 The guiding rules and principles for imposing discovery abuse sanctions were set
forth by the Texas Supreme Court in TransAmerican, 811 S.W.2d at 913. First, to be a
just sanction under Tex. R. Civ. Proc. 215, a direct relationship must exist between the
offensive conduct and the sanction imposed. TransAmerican, 811 S.W.2d at 917. A just
sanction is one that is targeted at the specific discovery abuse with a goal of remedying any
prejudice caused to the innocent party. Id. Under this principle, the trial court must
attempt to determine if the offensive conduct is attributable to the attorney, the party, or
both. Id. Second, again to satisfy the Rule 215 requirement that the sanctions be just, the
sanctions cannot be excessive. TransAmerican, 811 S.W.2d at 917. Describing this
principle, the Texas Supreme Court has stated that "[t]he punishment should fit the crime." 
Id. This second principle generally requires a trial court to first test the effectiveness of
lesser sanctions before entering death penalty sanctions. Id. at 918; Blackmon, 841
S.W.2d at 849. 

 In addition to the above two principles that arise out of Rule 215, constitutional due
process requirements must be met. See TransAmerican, 811 S.W.2d at 917-18. 
Constitutional due process precludes the imposition of sanctions that determine the merits
of a case unless the discovery abuse justifies a legal presumption that the disobedient
party's claims or defenses lack merit. Id. at 918.

Our Holding


 We have conducted "an independent inquiry of the entire record[.]" See Rossa, 830
S.W.2d at 672. The trial court's order describes the conduct for which Polaris was
sanctioned, which we summarize as follows:


 Polaris's multiple violations of the March 16, 2001, order that
compelled certain discovery responses.



 2. False statements in response to discovery requests and letter inquiries
by opposing counsel.



 Failure to timely supplement responses to requests for production and
answers to interrogatories.



 4. Violation of Rule 11 Agreement.


 5. Misleading statements in Polaris's response to the Irvings' motion to
compel.


 6. Violations of the Texas Penal Code.


 7. Conscious disregard of Tex. R. Civ. P. 193.3. 


Polaris argues that it did not abuse the discovery process and that the death penalty
sanction is unwarranted. Polaris denies that it or its attorneys are felons. The sanctions
order found that Polaris and its prior counsel committed felony offenses by violating Tex.
Pen. Code Ann. § 37.09 (Vernon Supp. 2001), although no indictment was returned or
trial held; in fact no oral testimony was presented. Basic due process rights were not
granted defendant or its prior counsel before their behavior was labeled criminal. 
Therefore, we will review the defendant's and prior counsel's actual conduct and give no
weight to the trial court's unsupportable labeling of the actions as violations of the Texas
Penal Code. 

 Although Polaris's conduct during the discovery process was problematic and even
perhaps sanctionable, we find no evidence to justify a legal presumption of lack of merit
of the Polaris defense. We find no evidence of prejudice that cannot or has not been
remedied. Also, we do not find any effort by the trial court to first test lesser sanctions. 
In no way do we condone the discovery conduct here; but, generally, lesser sanctions
should be tested before the imposition of death penalty sanctions. See Hamill v. Level, 917
S.W.2d 15, 16 (Tex. 1996); TransAmerican, 811 S.W.2d at 918; Blackmon, 841 S.W.2d
at 849-50. We find that, under the circumstances of this case, the basic requirements for
imposing death penalty sanctions are not present.

No Direct Relationship


 Polaris contends no direct relationship exists between the offending conduct and the
sanctions imposed. The Irvings maintain a relationship does exist -- specifically relying
on Polaris's failure to produce two joint defense agreements. 

 Two joint defense agreements were ultimately produced by Polaris -- one from June
1997 and the other from March 1998. The sanctions order found the joint defense
agreements were responsive to Request No. 6 of the Eighth Set of Requests for Production
and numbers 39 and 40 of Irvings' First Set of Requests for Production and should have
been timely produced when first requested. Instead, Polaris did not produce the
agreements until sometime after the Irvings nonsuited Kawasaki. Although the Irvings and
Polaris characterize the agreements differently, the documents in essence are agreements
among PWC manufacturers and/or distributors to cooperate "in the legal representation
and defense of their products, including sharing documents, factual material, mental
impressions, memoranda, reports, data and other information, including the confidences
of their Clients ("Defense Materials"), relating to the identified proceedings [legal issues
or actions that may arise from the NOAA, Coast Guard, and/or NTSB proceedings]."

 On November 2, 1999, the Irvings voluntarily dismissed Kawasaki early in the
development of their case and prior to their learning of the existence of any joint defense
agreement between certain PWC manufacturers. The Irvings claim that if Polaris had
produced the joint defense agreements, the Irvings would have been made aware of the
defendants' sharing of information and resources regarding PWC safety concerns and they
would not have nonsuited Kawasaki and thereby "lost" their causes of action relating to
negligence, conspiracy, and concert of action. Polaris views the Irvings' dismissal of
Kawasaki differently; during oral argument before this court, Polaris seemed to suggest
the Irvings nonsuited Kawasaki because they thought leg guard cases, such as the one the
Irvings asserted against Kawasaki, had no merit. We are not privy to either party's
strategy. Consequently, we do not accept Polaris's conclusion regarding the reasons for
the nonsuit; neither do we accept the Irvings' argument that they lost a claim based on a
1996 accident against Kawasaki merely on the basis of Polaris's failure to produce joint
defense agreements entered into in 1997 and 1998. The statute of limitations may have run
on the Irvings' claim against Kawasaki; however, the possibility of that eventuality in this
case was a known legal consequence when Kawasaki was dismissed from the case. 

 Whatever the reasons behind the Irvings' decision to nonsuit Kawasaki, there is no

indication that Polaris, the defendant still in the suit, is unable to respond fully in damages,
if found liable by a jury on the merits of this case. Furthermore, the Irvings are not
precluded from trying their case against Polaris as a result of the alleged discovery abuse. 
The evidence on which the Irvings relied in their sanctions motions was produced,
although the Irvings complain the evidence was produced untimely. Provided it is
admissible, the evidence they now have is available for use in a trial on the merits.
Moreover, whether or not the joint defense agreements may be relevant to the suit, the
agreements themselves, which Kawasaki also failed to produce in response to a discovery
request, do not create a cause of action. The agreements were entered into after the
occurrence of the accident involved in this case. 

 The death penalty sanctions were not targeted towards remedying prejudice because
none resulted from the alleged abuse. In view of the Texas Supreme Court's holding in
TransAmerican, we hold the trial court erred in imposing death penalty sanctions because
no direct relationship exists between the offending conduct and the death penalty sanction. 
Excessiveness of Sanctions


 Polaris contends the sanctions are excessive. We agree. Even if a court finds that
discovery abuse occurred, the trial court must not impose sanctions that are excessive. See
TransAmerican, 811 S.W.2d at 917. Discovery abuse may have occurred in this case;
certainly the Irvings maintain it did, and the trial court so found when it imposed
sanctions. Sanctions so severe that they preclude a party's presentation of its case on the
merits should not be assessed absent a party's bad faith or counsel's flagrant disregard for
the responsibilities of discovery under the rules. Blackmon, 841 S.W.2d at 849. Even
then lesser sanctions should be tested first to determine whether the lesser sanctions are
adequate to secure compliance, deterrence, and punishment of the offending party. Id.;
see Hamill, 917 S.W.2d at 16 n.1. 

 Here, the trial court's order imposing sanctions stated that lesser sanctions were
considered but not imposed, and that the trial court had previously admonished Polaris that
its ongoing conduct regarding discovery, if not abated, would result in sanctions. Though
the Irvings argue the trial court's admonishment of Polaris at the motion to compel hearing
constitutes a sanction, we disagree. The entry of an order to compel is not a lesser
sanction under Rule 215. See Williams v. Akzo Nobel Chems., Inc., 999 S.W.2d 836, 844
(Tex. App.--Tyler 1999, no pet.); Westfall Family Farms, Inc. v. King Ranch, Inc., 852
S.W.2d 587, 592 (Tex. App.--Dallas 1993, writ denied). Neither does a threat nor the
intent to sanction constitute a sanction. Akzo Nobel Chems., Inc., 999 S.W.2d at 844 (A
threat to dismiss for noncompliance is not a lesser sanction); but see Andras v. Memorial
Hosp. Sys., 888 S.W.2d 567, 572 (Tex. App.--Houston [1st Dist.] 1994, writ denied) (An
order to compel coupled with a threat to dismiss for noncompliance is a lesser sanction). 
In any event, no threat of death penalty sanctions for noncompliance was made prior to the
entry of those sanctions here. 

 The trial court did not impose lesser sanctions first, and it has not been shown that
lesser sanctions would have been ineffective. See G.T.E. Communications Sys. Corp. v.
Tanner, 856 S.W.2d 725, 729 (Tex. 1993). The trial court did impose monetary sanctions
at the same time it imposed the death penalty sanctions, but imposition of lesser sanctions
simultaneously with case determinative sanctions provides no test of the effectiveness of
lesser sanctions first. 

Due Process Considerations


 Very severe sanctions are restrained by constitutional due process. TransAmerican,
811 S.W.2d at 917. A trial on the merits is a fundamental due process right that cannot
lightly be taken away by government action. See generally Cunningham v. Parkdale Bank,
660 S.W.2d 810, 813 (Tex. 1983) (Fundamental fairness dictates that a party must be
given a reasonable opportunity to be heard on the merits.). Unless a party's obstruction
of the discovery process justifies a legal presumption that its claims or defenses lack merit,
the trial court cannot use death penalty sanctions to adjudicate the merits of a party's case. 
TransAmerican, 811 S.W.2d at 918 (citing Insurance Corp. of Ireland, Ltd. v. Compagnie
des Bauxites de Guinee, 456 U.S. 694, 705-06, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). 
 In TransAmerican, the Texas Supreme Court cited several United States Supreme
Court decisions for the principle that discovery sanctions cannot be used to adjudicate the
merits of a case unless the party's discovery abuse justifies a legal presumption that the
party's claims or defenses lack merit. Id., 811 S.W.2d at 918. This principle of
constitutional due process was set forth by the United States Supreme Court in Hammond
Packing Co. v. Arkansas, 212 U.S. 322, 350-51, 29 S.Ct. 370, 53 L.Ed. 530 (1909), and
the principle more recently has been referred to by the United States Supreme Court as
"the Hammond Packing presumption." See Insurance Corp. of Ireland, Ltd., 456 U.S.
at 706. The United States Supreme Court explained in Hammond Packing that, while the
striking of a pleading is, of course, a punishment in a sense, it is only remotely so because
"the generating source of the power [is] the right to create a presumption flowing from the
failure to produce." Id., 212 U.S. at 351. Due process is preserved "by the presumption
that the refusal to produce evidence material to the administration of due process [is] but
an admission of the want of merit in the asserted defense." Id. The legal presumption
arises "when such proof concerned the rightful decision of the cause[,]" i.e. the merits of
the claim or defense. Id. The suppression of proof, when the suppression defeats a trial
on the merits of the case, is treated as an admission by the party or as a constructive
waiver of a trial on the merits. Entry of a judgment on the merits as a sanction is justified
despite constitutional due process restraints where the sanctioned conduct is "but an
admission" by a party or a constructive waiver. Id. The Texas Supreme Court has held,
therefore, that due process allows the use of death penalty sanctions only when the
discovery abuse justifies the legal presumption that the party's claims or defenses lack
merit. See Remington Arms Co., Inc. v. Caldwell, 850 S.W.2d 167, 171 (Tex. 1993). 

 Though we do not condone Polaris's conduct during the discovery process, we do
not believe the legal presumption of lack of merit is warranted here. Plaintiffs' requests
for production numbers 39 and 40 asked Polaris to produce any agreements regarding this
case, or any other case, between Polaris and any other defendant in this case. Polaris
initially answered "none." (3) Polaris says that it did not view the joint defense agreements
as agreements regarding this or any other case because the agreements did not concern the
defense of personal injury litigation but rather were for potential regulatory litigation. The
express language of the agreements refers to regulations pending at the time the agreements
were signed and not to personal injury cases. We need not consider whether the
agreements were privileged and confidential because they already have been produced by
Polaris; we simply find no evidence that the initial failure to produce these documents
justifies a legal presumption that the Polaris defense lacks merit. 

 In request number two of the Irvings' Second Set of Requests for Production,
Polaris was asked early on in the discovery process to produce any written reports
concerning any device that provides for increased steering ability in a PWC in off-throttle
steering situations. By supplemental response to the Irvings' second set of interrogatories,
Polaris produced various patents that the trial court concluded should have been produced
earlier in response to the request for production. Polaris argues the patents do not concern
off-throttle steering devices. Polaris also produced a letter from a salesman in response
to an interrogatory; the letter was dated 1½ years after the accident. These actions were
cited by the trial court as grounds for sanctions. The trial court also found that two letters
by prior defense counsel written to plaintiff's counsel were sanctionable. We do not
believe this conduct justifies a legal presumption that the Polaris defense lacks merit. 

 The trial court found that a Rule 11 agreement to "fully and completely" answer a
set of interrogatories constituted an agreement to produce privileged documents. We
believe this stretches the language of the Rule 11 agreement too far. Nevertheless, the trial
court based its sanctions order in part on the failure to produce privileged documents. This
conduct by defendant or prior defense counsel does not constitute "but an admission," or
a constructive waiver of the merits of the case, sufficient to justify a legal presumption that
the Polaris defense lacks merit. 

 We need not discuss each additional discovery dispute. Essentially, the trial court
overruled objections made by Polaris to certain discovery requests and ordered production
of documents and information. Polaris then produced documents and answered
interrogatories. The Irvings now claim Polaris's pleadings should be stricken because
Polaris did not produce all the discovery earlier without an order to compel. While this
conduct may or may not be sanctionable in some other way, the conduct of Polaris and its
counsel has not prejudiced the Irvings' ability to pursue the merits of their claim. 
Constitutional due process requires that cases be tried on the merits rather than by case
determinative sanctions, with the rare exception of those cases where discovery abuse
precludes "the rightful decision of the cause." Hammond Packing, 212 U.S. at 351. 
Polaris has not refused to provide non-privileged information; it responded to the trial
court's order compelling answers and has paid the monetary sanctions. Here, the conduct
may be sanctionable because the answers and responses were incomplete and needed timely
supplementation, were evasive and involved unwarranted nitpicking interpretations of the
questions, but the conduct here is not sufficient, given constitutional due process
constraints, to warrant the legal presumption that the Polaris defense lacks merit. Without
the constitutional authority to make that legal presumption, the trial court erred in assessing
death penalty sanctions. See Hamill, 917 S.W.2d at 16. 

Conclusion


 In view of the failure to first test the effectiveness of lesser sanctions, the lack of
a direct relationship between the offending conduct and the case determinative sanctions
imposed, the excessiveness of the sanctions, and the lack of any evidence in the record to
justify the legal presumption that the Polaris defense lacks merit, we conclude the trial
court abused its discretion in imposing case determinative sanctions. We conditionally
grant the writ of mandamus and direct the trial court to vacate its sanctions order of May
11, 2001. We are confident that the Honorable Judge Gary Sanderson will follow this
opinion without issuance of a mandate; if not, one will be issued.

 WRIT CONDITIONALLY GRANTED. 

 __________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on September 6, 2001

Opinion Delivered November 29, 2001

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. The Irvings' suit against Kawasaki Motors Corporation U.S.A. also included
several other Kawasaki entities.
2. The instant suit and Irvings' suit against Rayon's, Inc. were consolidated.
3. To those same requests for production, Kawasaki answered "[n]o such agreements
are known."