**Opinion issued June 11, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00290-CV

————————————

**WARWICK OIL & GAS, INC., WARWICK OIL & GAS, INC., RESERVE ROYALTY CORPORATION, THOMAS CHRISTOPHER KNOWLES, AND FRAN MICHAEL, Appellants**

**V.**

**FBS PROPERTIES, INC., Appellee**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2012-33816

## MEMORANDUM OPINION

Appellee FBS Properties, Inc. sued appellants Warwick Oil & Gas, Inc. (a Texas corporation), Warwick Oil & Gas, Inc. (an Oklahoma corporation), Reserve Royalty Corporation (formerly known as Fran Michael Interests), Thomas

Christopher Knowles, and Fran Michael for, among other things, a declaratory judgment that FBS owned certain assets of Reserve and the Warwick companies that FBS had purchased from Knowles's ex-wife, Maninderjit Mann. Appellants asserted that Mann did not own the interests when she purported to sell them, but failed to produce relevant and responsive discovery materials. The trial court entered an order compelling discovery, a second order compelling discovery and imposing sanctions, and a third order imposing sanctions, but appellants nevertheless failed to comply with their discovery obligations. On a final motion for sanctions, the trial court found that appellants' hindrance of the discovery process justified a presumption that their defenses lacked merit, struck appellants' pleadings, and entered a declaratory judgment in FBS's favor.

On appeal, appellants assert that the trial court (1) erred in denying their motion for summary judgment, (2) abused its discretion in striking their pleadings and entering a declaratory judgment in FBS's favor as a final sanction for discovery misconduct, (3) erred in entering a modified order on March 7, 2014, which appellants characterize as a nunc pro tunc judgment, and (4) abused its discretion in issuing a post-judgment turnover order. We affirm.

## Background

FBS sued appellants in June 2012 seeking, among other things, a declaratory judgment that it owned 100% of the stock and assets of Reserve and 50% of the

2

stock and assets of the Warwick companies. Appellants moved for summary judgment, arguing that Mann, from whom FBS purchased the interests in the companies, did not own or have the right to convey them. FBS's evidence in opposition to the motion for summary judgment showed that in 2011, FBS's Chief Executive Officer, Fred Schneiderman, purchased 100% of Mann's ownership interests in the Warwick companies and Reserve. Mann was Knowles's ex-wife. FBS also adduced evidence that Mann owned 100% of Reserve and 50% of each of the Warwick companies, which she had acquired from Knowles after their divorce. The trial court denied appellants' motion.

Before appellants moved for summary judgment, on July 30, 2012, FBS served appellants with interrogatories and requests for production, seeking information and documents related to ownership of the companies' stock and assets. Appellants responded that all documents responsive to FBS's requests were destroyed in a 2008 fire. FBS served a second set of requests directed at learning more about the fire and which documents were destroyed, but appellants objected that the requests were too burdensome.

### March 2013 order compelling discovery

Although appellants failed to produce responsive documents, FBS learned that appellants had produced documents in an unrelated lawsuit that post-dated the alleged 2008 fire and were responsive to FBS's requests. Accordingly, on October

16, 2012, FBS moved to compel discovery responses and production on the grounds that "Defendants have not produced a single document . . . , have not provided proper written responses . . . , and have not even proposed an expected date for compliance." With its motion to compel, FBS adduced evidence that in the other lawsuit, appellants produced documents regarding an April 2010 sale involving assets of Reserve. FBS also adduced evidence that appellants produced documents specifying assets owned by Reserve as of January 2011 in the other lawsuit.

Before the motion to compel was heard, appellants agreed to enter a Rule 11 Agreement in which they promised to "exercise due diligence to obtain documents pursuant to Plaintiff's Request for Production" and to "provide explanation as to the absence of documents" by January 4, 2013. But appellants produced no documents by January 4, 2013. Accordingly, on March 18, 2013, the trial court granted FBS's first motion to compel. The trial court struck appellants' discovery objections and ordered appellants to "produce complete written responses and a complete document production" within "ten days of this Order."

### *July 2013 order compelling discovery and imposing sanctions*

Appellants did not produce discovery responses or documents, and on June 24, 2013, FBS moved to compel production a second time and moved for

4

sanctions. On July 26, 2013, the trial court granted both motions, awarded FBS $6,500 in attorney's fees as a sanction, and ordered:

> that within seven (7) days of this Order, [appellants] shall produce complete written responses and a complete document production as to FBS's First Discovery Requests and FBS's Second Discovery Requests. Furthermore, all objections to those discovery requests are STRICKEN. Noncompliance with this second order compelling production will result in the striking of Defendants' answers and judgment being entered in favor of FBS Properties, Inc.

### *December 2013 sanctions order*

Appellants produced no documents or responses within seven days of the order. On August 6, 2013, appellants produced some bank records, but did not otherwise comply with the order. On August 20, 2013, FBS again moved for sanctions. The trial court heard the motion on August 30, 2013 and ordered that Knowles testify by deposition about efforts made to comply with appellants' discovery obligations and the court's orders. The trial court took the motion under advisement until after the deposition.

On October 30, 2013, appellants paid the $6,500 sanction. FBS took Knowles's deposition on November 8, 2013 and then supplemented its second motion for sanctions with excerpts of Knowles's deposition, in which he testified that he did not provide discovery responses or documents in response to the court's July 2013 order and that he never attempted to locate various documents responsive to FBS's discovery requests. Knowles also admitted that he had

5

testified in a different lawsuit that he retrieved company records from the companies' CPA, Roger Burkholder, in 2010, but he recanted that testimony and denied that he had ever retrieved any records.

On December 13, 2013, the trial court held a second hearing on FBS's motion for sanctions. The trial court granted the motion, found Knowles and Michael in contempt, and found certain facts established and admitted for all purposes under Texas Rule of Civil Procedure 215.2(b)(3), including:

- Knowles assigned 50% of the stock and assets of each of the Warwick companies to Mann in December 2007 and subsequent agreements, and Mann owned 100% of Reserve as of December 2007;

- Mann assigned all of her rights in these companies to Schneiderman, and Schneiderman assigned all of his rights in the companies to FBS;

- At all relevant times, Knowles maintained exclusive managerial control over the Warwick companies and Reserve.

The trial court ordered Knowles and Michael to pay within seven days $16,500 in attorney's fees that FBS incurred in connection with the motion.

### March 2014 sanctions order striking pleadings

Knowles and Michael did not timely pay the $16,500 sanction. In response to FBS's inquiries, three weeks after the payment deadline, appellants responded that Knowles could not afford to pay the sanction because Knowles "was hit with a child support arrearage on a child that he recently learned was his in Ft. Bend County."

6

On January 24, 2014, FBS moved to enforce the sanctions order and for additional sanctions, asking the trial court to strike the appellants' answers and enter a declaratory judgment that FBS owned 50% of the assets of the Warwick companies and 100% of the assets of Reserve. On March 7, 2014, the trial court held a hearing and granted the motion.

The trial court found that Knowles had repeatedly disobeyed and disregarded discovery orders over a period of nearly two years in order to avoid producing responsive documents and answering legitimate discovery requests aimed at proving the disputed issues in the case. The trial court found that the imposition of lesser sanctions, and the warning that noncompliance would result in judgment being entered in favor of FBS, had not secured compliance. The trial court further found that Knowles's claim that he could not pay the $16,500 sanction was not credible in light of evidence regarding available money in bank accounts and income received by the companies over the previous two years. The trial court concluded that "Knowles's hindrance of the discovery process justifies a presumption that his defenses lack merit." Based on these findings, the trial court struck the answers of Knowles and Michael and entered a declaratory judgment in FBS's favor that FBS owned 50% of the assets of the Warwick companies and 100% of the assets of Reserve.

*April 2014 order modification*

On March 14, 2014, FBS moved to correct the judgment to include the corporate defendants. On April 2, 2014, the trial court granted the motion, finding that at all relevant times, Knowles was acting on behalf of all of his co-defendants. The trial court also granted FBS's motion to dismiss the remaining claims against the defendants, rendering the April 2, 2014 corrected order a final judgment.

*Post-judgment activity*

The final judgment required appellants to give FBS an immediate written assignment of all right, title, and interest in 50% of the assets of the Warwick companies and 100% of the assets of Reserve. When appellants failed to do so, FBS applied to the trial court for a turnover order. A hearing was held on June 20, 2014, at which Knowles was present and agreed to sign a written assignment that complied with the April 2 judgment. Accordingly, the trial court signed a turnover order ordering appellants to execute the assignments as required by the judgment.

**Sanctions**

In their second issue, appellants argue that the trial court abused its discretion by striking appellants' pleadings and granting a declaratory judgment to FBS because a presumption that their defenses lacked merit was not justified. FBS responds that the trial court imposed this sanction only after lesser sanctions failed

to secure appellants' compliance with the discovery rules and previous orders of the court and after ample time was given for compliance.

## A.      Standard of Review and Applicable Law

Discovery sanctions serve to secure compliance with the discovery rules, deter other litigants from violating the discovery rules, and punish those who violate the rules. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied). "When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits; instead, it focuses on the party's conduct of discovery." *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). "Sanctions that terminate or inhibit the presentation of the merits of a party's claims for decision are authorized by TEX. R. CIV. P. 215, and include exclusion of essential evidence, striking of pleadings, dismissal, and default." *Id.* (citing TEX. R. CIV. P. 215). "The choice of sanctions under rule 215 is left to the sound discretion of the trial court." *Id.* (citing TEX. R. CIV. P. 215; *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)).

We review the court's imposition of these sanctions under an abuse of discretion standard. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex.

2006) (per curiam); *Daniel*, 981 S.W.2d at 234. In conducting this review, we review the entire record, including the evidence, arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *Daniel*, 981 S.W.2d at 234 (citing *United States Fid. & Guar. Co. v. Rossa*, 830 S.W.2d 668, 672 (Tex. App.—Waco 1992, writ denied)). "We are not limited to a review of the 'sufficiency of the evidence' to support the findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion in imposing the sanction." *Id.* (citing *Rossa*, 830 S.W.2d at 672).

"When the sanctions are so severe as to preclude presentation of the merits, that discretion is limited by the requirement that the sanctions be 'just.'" *Id.* (citing Tex. R. Civ. P. 215(2)(b); *TransAmerican*, 811 S.W.2d at 917–18). "Four factors determine whether the sanctions are just: (1) the sanction must bear a direct relationship to the offensive conduct; (2) the sanction must not be excessive; (3) the trial court must first impose a less stringent sanction; and (4) the trial court should not deny a trial on the merits, unless it finds that the sanctioned party's conduct justifies a presumption that its claims or defenses lack merit and that it would be unjust to permit the party to present the substance of that position which is the subject of the withheld discovery before the court." *Id.* at 234–35 (citations and quotations omitted).

10

The record must reflect that the court considered the availability of less stringent sanctions. *See Daniel*, 981 S.W.2d at 234–35 (citing *Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993)). "Sanctions that by their severity prevent a decision on the merits of a case cannot be justified 'absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules.'" *Id.* (quoting *TransAmerican*, 811 S.W.2d at 918). "Even then, lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender." *Id.* (citing *TransAmerican*, 811 S.W.2d at 918). "[I]f a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *TransAmerican*, 811 S.W.2d at 918.

## B. Analysis

Appellants argue that the fourth factor necessary to justify the sanctions imposed—that their conduct justified a presumption that their defenses lacked merit—was not met. *See Daniel*, 981 S.W.2d at 234–35. Appellants raise three principal arguments:

- FBS sought tax returns from Knowles and the companies, but because appellants had not filed tax returns during the relevant time period, there was nothing for appellants to produce. Appellants further argue that the tax returns would not have been sufficient to support FBS's claim of ownership, and that the only documents that would support FBS's claim were security certificates, which did not exist.

11

Appellants argue that because they were not required to produce documents that did not exist, and because the documents would not go to the heart of the case, failure to produce them could not be wrongful.

- Other documents sought by FBS were destroyed in a fire in 2008, before FBS sued. Thus, failure to produce the destroyed documents could not be wrongful discovery behavior.

- Some unidentified documents sought by FBS were available in the public record and through the Texas Comptroller's office. Thus, failure to produce those documents could not be wrongful discovery behavior.

For all of these reasons, appellants argue that the trial court erred in concluding that they acted in bad faith in discovery. *See TransAmerican*, 811 S.W.2d at 918 (sanctions that by their severity prevent decision on merits of case cannot be justified absent party's flagrant bad faith or counsel's callous disregard for responsibilities of discovery under the rules).

Based on our review of the entire record, we conclude that the trial court did not abuse its discretion in concluding that appellants' bad faith conduct justified a presumption that their defenses lacked merit. The discovery FBS sought was directed at appellants' claim that FBS did not own the companies. Appellants argue that the types of documents requested, including documents related to the companies' financials, did not go to the heart of the case, but we disagree. Here, the entire dispute centered around ownership of the companies and the companies' assets, and thus, documents evidencing the financial and ownership interests in the companies would be unquestionably relevant. While we agree that appellants were

12

not required to create documents that did not exist, appellants improperly focus on the non-existent tax returns to the exclusion of other existing responsive documents that they failed to produce.

The record supports the trial court's conclusion that appellants intentionally failed to produce responsive documents that were relevant to the central issue in the case. FBS presented evidence that, in a different lawsuit, Knowles produced documents post-dating the alleged 2008 fire that would have been responsive to FBS's requests, but never produced those documents in the underlying litigation. FBS also presented evidence that Knowles had previously testified under oath that he retrieved certain relevant and responsive documents from the companies' CPA in 2010, after the alleged fire. And Knowles himself testified about a number of different documents, including bank statements and checks, to which he had access but made no effort to produce. Based on this evidence, the trial court could have reasonably concluded that, even if certain documents did not exist, were destroyed in the 2008 fire, or were publicly available, there were other responsive documents relevant to the central issues in the case that appellants wrongfully and repeatedly failed to produce, even after the trial court warned that such failure would result in the striking of their pleadings and entry of judgment for FBS.

The record also reflects that the trial court considered the availability of less stringent sanctions and imposed a series of less stringent sanctions in an attempt to

13

secure appellants' compliance.  *See TransAmerican*, 811 S.W.2d at 917.  Before entering the final sanctions order, over a period of nearly a year, the trial court:

- March 2013: Granted FBS's first motion to compel, struck appellants' objections to FBS's discovery requests, and ordered appellants to "produce complete written responses and a complete document production" within 10 days.  Appellants did not comply with this order.

- July 2013: Granted FBS's second motion to compel, again struck appellants' objections to FBS's discovery requests, and ordered appellants to produce complete written responses and documents within 7 days, warning appellants that "Noncompliance with this second order compelling production will result in the striking of Defendants' answers and judgment being entered in favor of FBS Properties, Inc."  The trial court also ordered appellants to pay $6,500 of FBS's attorney's fees as sanctions for failing to comply with the order on the first motion to compel.

- December 2013: Granted FBS's second motion for sanctions after appellants produced documents responsive to only one request for production.  The trial court held appellants in contempt, found certain facts established and admitted, and ordered appellants to pay the $16,500 in attorney's fees incurred due to appellants' failure to comply with the order on the second motion to compel.  Appellants did not pay the sanction or provide discovery responses or production.

Thus, the trial court tested a variety of lesser sanctions in an attempt to secure appellants' compliance over a period of time, but appellants failed to comply.  *See id.*

Appellants rely primarily on two cases to argue that the trial court abused its discretion.  In the first, *Knoderer v. State Farm Lloyds*, 06-13-00027-CV, 2014 WL 4699136 (Tex. App.—Texarkana Sep. 19, 2014, no pet.), the appellate court

held that the trial court erred in striking the pleadings as a discovery sanction because, among other things, the trial court had not imposed any lesser sanctions in an attempt to secure compliance before striking the pleadings. *Id.* at \*11. In contrast, here, the trial court imposed a number of lesser sanctions over an extended period of time and provided ample time to comply in an attempt to secure appellants' compliance. Thus, *Knoderer* is inapposite.

The second case, *Young v. Johnny Ribeiro Building, Inc.*, 787 P.2d 777 (Nev. 1990), involved the striking of a plaintiff's pleadings for an accounting, dissolution of a partnership, and breach of fiduciary duty, following the discovery that the plaintiff fabricated evidence related to the partnership property and the plaintiff's interest in it. *Id.* at 780. This sanction was affirmed because the discovery abuse related to the cause of action. Appellants argue that *Young* illustrates the type of relationship that is required to support the striking of pleadings and that this type of relationship is absent here. But we have already concluded that the discovery requested by FBS went to the heart of FBS's claims and appellants' purported defense regarding ownership of the companies and their assets. Thus, *Young* bolsters our conclusion that the trial court did not err in striking appellants' pleadings here.

Having reviewed the entire record, we conclude that the trial court did not abuse its discretion in concluding that appellants' bad faith discovery misconduct

15

justified a presumption that their defenses lacked merit. *See TransAmerican*, 811 S.W.2d at 918 ("[I]f a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it."). Accordingly, we hold that the trial court did not abuse its discretion in striking appellants' pleadings and granting a declaratory judgment to FBS. *See id.*; *see, e.g.*, *5 Star Diamond, LLC v. Singh*, 369 S.W.3d 572, 578–79 (Tex. App.—Dallas 2012, no pet.) (no abuse of discretion in striking pleadings after disregard for two orders compelling production and one for monetary sanctions); *Finley Oilwell Serv., Inc. v. Retamco Operating, Inc.*, 248 S.W.3d 314, 320 (Tex. App.—San Antonio 2007, pet. denied) (no abuse of discretion in striking answer and entering default judgment after multiple orders compelling production and for monetary sanctions disregarded).

We overrule appellants' second issue.

## Summary Judgment

In their first issue, appellants argue that the trial court erred in denying their motion for summary judgment on FBS's declaratory judgment claim because FBS did not present evidence raising a fact issue regarding whether there was a transfer of ownership of the companies' assets from Knowles to Mann. Appellants moved for summary judgment in August 2013, and the trial court denied the motion in September 2013.

"The general rule is that a denial of a summary judgment is not reviewable on appeal." *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). "This is because a denial of a summary judgment is not a final judgment." *Id.* Here, appellants asserted that they were entitled to a summary judgment on FBS's declaratory judgment claim. The trial court signed an order denying this summary-judgment motion, and FBS's declaratory judgment claim was instead later adjudicated as a result of the trial court's striking of appellants' pleadings as sanction for their discovery abuse. Thus, we may not review the order denying the summary judgment. *See, e.g.*, *Kings River Trail Ass'n, Inc. v. Pinehurst Trail Holdings, L.L.C.*, 447 S.W.3d 439, 447 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("[O]n appeal we may not review the trial court's denial of [the appellants'] summary-judgment motion."); *see also Cates*, 927 S.W.2d at 625.

We overrule appellants' first issue.

## The April 2, 2014 Order

In their third issue, appellants argue that the trial court erred in entering the April 2, 2014 order, which they characterize as a nunc pro tunc judgment, because the addition in that order of the corporate defendants that had been omitted from the March 7, 2014 order was not a correction of a mere clerical error.

17

**A.    Post-Judgment Plenary Power and Nunc Pro Tunc Judgments**

Under Texas Rule of Civil Procedure 329b, the trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform its judgment within 30 days after the judgment is signed, and the trial court's plenary power may be extended beyond 30 days by the filing of various post-judgment motions. *See* TEX. R. CIV. P. 329b(c), (d), (e), (g). "A trial court's power to modify its judgment is virtually absolute during the period of its plenary power." *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Once the trial court has lost plenary jurisdiction, a nunc pro tunc judgment may be entered to correct a clerical error. *See Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). A judgment nunc pro tunc is only proper if the court is correcting an error that does not result from judicial reasoning, evidence, or determination; it may not be used to correct an error that occurs in the rendering, rather than the entering, of the judgment and arises from a mistake of law or fact that requires judicial reasoning to correct. *See Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986); *Andrews*, 702 S.W.2d at 585; *Butler v. Cont'l Airlines, Inc.*, 31 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

**B.    Analysis**

The March 7, 2014 order struck Knowles's and Michael's pleadings and entered a default judgment in FBS's favor, but omitted the corporate defendants.

Appellants argue that the trial court erred in entering the April 2, 2014 order, which corrected the March 7, 2014 order to include the corporate defendants, because the omission of the corporate defendants from the March 7, 2014 order was not a clerical error.

We need not decide whether the addition of the corporate defendants to the April 2 order was a clerical or judicial error because the April 2 order was signed within 30 days of the March 7 order, while the trial court retained plenary power to modify the March 7 order in any way. *See In re Provine*, 312 S.W.3d at 829 ("A trial court's power to modify its judgment is virtually absolute during the period of its plenary power."). Accordingly, the trial court did not err in entering the corrected order on April 2. *See id.*

We overrule appellants' third issue.

### Turnover Order

In their fourth issue, appellants argue that the trial court abused its discretion in issuing the June 20, 2014 turnover order.

### A. Standard of Review and Applicable Law

We review turnover orders for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Under the abuse-of-discretion standard, legal and factual insufficiency challenges do not constitute independent grounds for error, but are factors we examine in assessing whether the trial court

abused its discretion. *See Tanner v. McCarthy*, 274 S.W.3d 311, 322 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Jones v. Am. Airlines, Inc.*, 131 S.W.3d 261, 266 (Tex. App.—Fort Worth 2004, no pet.). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, without reference to any guiding rules and principles. *Beaumont Bank*, 806 S.W.2d at 226. We will not reverse if there is some evidence of a substantive and probative character to support the trial court's decision. *Tanner*, 274 S.W.3d at 321; *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied).

The turnover statute is a purely procedural device by which creditors may reach nonexempt assets of debtors that are otherwise difficult to attach or levy on by ordinary legal process. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (West 2015); *Burns*, 948 S.W.2d at 321. A turnover order is proper if the conditions of the turnover statute, Texas Civil Practice and Remedies Code section 31.002, are met. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (West 2015). One of the conditions is that the judgment debtor must own the property that is the subject of the order. *See id.* § 31.002(a); *Suttles v. Vestin Realty Mortg. I, Inc.*, 317 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

**B.    Analysis**

Appellants argue that the trial court abused its discretion in entering the turnover order because the trial court's judgment indicates that FBS, not appellants, own the assets that are the subject of the turnover order.  Thus, they argue, the requirement that the judgment debtor own the property that is the subject of the order was not met.

We conclude that appellants have waived their complaint regarding the turnover order.  Knowles agreed under oath at the turnover hearing to sign written assignments as required by the trial court's judgment.  The trial court's turnover order merely memorialized the requirements that Knowles execute the documents as he had agreed.  Accordingly, appellants may not complain about the turnover order.  *See Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 562 (Tex. App.—Dallas 1989, no writ) ("Having consented to this action of the court in entering judgment, he thereby waives all errors committed or contained in the judgment, thus having nothing which could properly be considered by an appellate court . . . ."); *see, e.g.*, *Henke v. Peoples State Bank of Halletsville*, 6 S.W.3d 717, 720 (Tex. App.—Corpus Christi 1999, pet. dism'd w.o.j.) (party who agreed to injunction waived right to appeal injunction).

Even if appellants had not waived their right to appeal the turnover order, the record does not support a finding that the trial court abused its discretion in

entering the order. The trial court's declaratory judgment resolved the competing claims of ownership of the assets of the Warwick companies and Reserve and directed appellants to provide "[a]n immediate written assignment from Defendants to FBS Properties, Inc. of all right, title, and interest in" assets of the Companies. However, the appellants refused to give FBS the assignments and continued to assert that they owned the assets, even after the trial court's judgment was entered. At the turnover hearing, FBS submitted the appellants' sworn interrogatory answers in which they asserted ownership over the assets, and Knowles testified that those assets were assets of the companies. The turnover order directed appellants to provide the assignments, as required by the judgment. Accordingly, the record demonstrated that the appellants claimed ownership over the assets and thus, the trial court did not abuse its discretion in entering the turnover order. *See Tanner*, 274 S.W.3d at 322 (under abuse-of-discretion standard, legal and factual insufficiency challenges do not constitute independent grounds for error, but are factors examined in assessing whether trial court abused its discretion); *Burns*, 948 S.W.2d at 324 (appellate court will not reverse turnover order if there is some evidence of a substantive and probative character to support the trial court's decision).

We overrule appellants' fourth issue.

## New Issues Raised in Appellants' Reply Brief

Appellants raised two new issues in their reply brief. They contend, first, that the final judgment was supported by insufficient evidence and, second, that the Warwick companies and Reserve did not have proper notice that their pleadings would be stricken. FBS moved to strike the portions of the reply brief that raised new issues. In response, appellants argue that the issues are not new, and in the alternative, request leave to supplement their brief.

Appellants contend that their argument that the final judgment is supported by insufficient evidence is simply a reframing of the first issue in their appellate brief. The first issue in appellants' opening brief challenged the trial court's denial of appellants' no-evidence and traditional motions for summary judgment on FBS's declaratory judgment claim, which occurred more than six months before final judgment was entered. In their opening brief, appellants argued that the trial court erred in denying summary judgment because FBS failed to raise a fact issue regarding whether there was a transfer of ownership of the companies' assets from Knowles to Mann. This is substantively distinct from the argument raised in the reply—that the trial court's final judgment, entered after the trial court struck appellants' pleadings, is supported by insufficient evidence. Thus, we conclude that this issue raised in appellants' reply brief is new.

Likewise, appellants contend that their argument that the Warwick companies and Reserve did not have proper notice that their pleadings would be stricken is simply a reframing of the third issue in their appellate brief. The third issue raised in their brief was that the trial court erred in issuing what appellants characterized as a nunc pro tunc judgment. The opening brief made no mention of any argument regarding notice, and instead focused solely on the claim that the trial court lacked authority to alter the March 7 order on April 2 because the revision was substantive and not clerical. Thus, we conclude that this issue raised in appellants' reply brief is also new.

Relying on Texas Rule of Appellate Procedure 38.7, appellants ask that, if we conclude that they have raised new issues in their reply brief, we grant leave for them to supplement their brief with the new issues. Rule 38.7 states that "[a] brief may be amended or supplemented whenever justice requires . . . ." TEX. R. APP. P. 38.7. Appellants argue that supplementing their brief would serve the interest of justice because the reply brief "states no new issues or attacks on the judgments but only attempts to prevent waiver through mistake by reframing their previous argument." We have already rejected appellants' argument that the new issues in the reply brief are merely reframed arguments that were raised in the original brief.

Moreover, although we may permit supplementation when justice requires, "the rules of appellate procedure do not allow an appellant to include in a reply

24

brief a new issue in response to some matter pointed out in the appellee[']s brief but not raised by the appellant's original brief." *Green v. Quality Dialysis One, LP*, No. 14-05-01247-CV, 2007 WL 2239295, at \*6 (Tex. App.—Houston [14th Dist.] Aug. 7, 2007, no pet.); *see Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied) (holding arguments raised for the first time in appellant's reply brief were not properly before the court); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied) ("A reply brief is not intended to allow an appellant to raise new issues."). "To allow an appellant to raise new issues in a reply brief would vitiate the briefing requirements of Texas Rule of Appellate Procedure 38.1." *Green*, 2007 WL 2239295, at \*6. And, given their failure to engage in the discovery process in the proceedings below, we do not believe that justice requires us to allow appellants to raise new issues at this late stage.

Because these two issues raised in appellants' reply are new, and because appellants may not raise new issues in their reply brief and have not demonstrated that supplementation would be consistent with the requirements of the Texas Rules of Appellate Procedure and in the interest of justice, we deny appellants' motion to supplement their original brief and grant FBS's motion to strike the two new issues

raised in the reply.[1]  *See* TEX. R. APP. P. 38.1(f); *Green*, 2007 WL 2239295, at *6;

*Gonzales*, 183 S.W.3d at 104; *Lopez*, 131 S.W.3d at 61.

**Conclusion**

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.

---

[1]     We note that, even if we were to deny FBS's motion to strike and permit supplementation of appellants' original brief with the newly-raised issues, the outcome of this appeal would be unaffected.